[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs bring this appeal following approval by the New Haven Board of Aldermen of a Planned Development District (PDD), sought by the defendants Anthony DelMonaco Limited Family Partnership, Antonio DelMonaco and Anna DelMonaco.
The defendants proposed the creation of a Planned Development District (PDD), pursuant to § 65 of the Zoning Ordinances of the City of New Haven, in order to enlarge an existing banquet and catering facility, expand on-site parking, and construct a residence, to be occupied by Antonio and Anna DelMonaco.
The proposal encompassed six properties situated on the eastern shore of New Haven, in the "Morris Cove" section of the city.
All are located in an RS-2 single family residence zone.
208 Cove Street, the location of Anthony's Oceanview, Inc., consists of 1.727 acres, and is the site of the existing banquet and catering facility which operates as a lawful, nonconforming use.
The five additional parcels, acquired by the defendants, are 30 Morris Cove Road, 36-50 Morris Cove Road, 1 Bristol Place, 5 Bristol Place, and 7 Bristol Place.
Together, the six properties form a contiguous parcel, consisting of 4.04 acres.
The property includes the site of the former Cove Manor Nursing Home, which was acquired by the defendants in 1998.
Although the nursing home is not operating on the site, the New Haven Board of Zoning Appeals has determined that the nursing home is a nonconforming use, which has not been abandoned. CT Page 4005
In their Planned Development District (PDD) proposal, the defendants contemplated razing the residential structures, as well as the Cove Manor Nursing Home.
The proposed PDD, therefore, would include an expanded banquet and catering establishment, along with the DelMonaco's residence.
Planned Development Districts (PDD) may be established, consistent with the requirements of § 65 of the Zoning Ordinances of the City of New Haven.
In order to be eligible for consideration as a PDD, a minimum of two acres is required.[1]
The ordinances provides that the PDD application, and General Plans, are filed with the Board of Aldermen, the zoning authority of the City of New Haven.
A proposal, which when acted upon by the Board of Aldermen becomes a "proposed amendment to (the) zoning ordinance,"[2] is referred to the City Plan Commission.
Section 65.D2 provides that "following a favorable recommendation by the City Plan Commission, and after an advisory report from the Department of Traffic and Parking," the proposed PDD is voted upon by the Board of Aldermen.
The Planned Development District is designated, following approval by the Board of Aldermen.
A Planned Development District, established pursuant to the ordinance, must meet three criteria:[3]
1. It must be in accordance with the comprehensive plan of the city, including all plans for redevelopment and renewal.
2. It must be composed of such uses, and in such proportions, as are most appropriate and necessary for the integrated functioning of the planned development, and for the city.
3. It must be so designed in its space allocation, orientation, texture, materials, landscaping and other features as to produce an environment of stable and desirable character, complementing the design and values of the surrounding neighborhood, and showing such unusual CT Page 4006 merit as to reflect credit upon the developer and upon the city.
Following the amendment of the zoning ordinance and the zoning map by the Board of Aldermen, a set of Detailed Plans must be filed with the City Plan Commission.
Prior to the issuance of any building permit, the City Plan Commission must determine that the Detailed Plans are in accordance with the PDD Application, and the General Plans as approved by the Board of Aldermen.[4]
The ordinance provides for automatic approval of the Detailed Plans, if no action is taken within 60 days.
This automatic approval provision is directly analogous to provisions of the General Statutes, concerning subdivisions and site plans.[5]
Following the referral of the defendants' proposal to the City Plan Commission, public hearings were held on June 13, 2001 and July 25, 2001.
The defendants argued that the PDD proposal would remove the nonconforming Cove Manor Nursing Home, thus reducing from two to one the number of existing nonconforming uses in the proposed district.
The proponents of the PDD also contended that the new arrangement would alleviate chronic off-site traffic problems, by providing additional on-site parking.
They argued that the new configuration would enhance the neighborhood, and be more compatible with the RS-2 zone, than the existing nonconforming uses.
The proposal attracted vehement opposition from neighbors, who claimed that existing conditions producing excessive noise and traffic congestion would be exacerbated if the PDD was approved.
They maintained that the PDD is incompatible with the residential character of the Morris Cove area.
On September 19, 2001, the City Plan Commission issued a report (ROR 8), recommending approval of the PDD, with conditions.
The matter was referred to the Legislative Committee of the Board of Aldermen, which held additional public hearings on October 22, 2001, CT Page 4007 October 30, 2001 and November 27, 2001.
On February 19, 2002, the Board of Aldermen voted to approve the PDD, but made certain changes in the proposal which had been presented to it by the City Plan Commission.
Consistent with § 65.A of the ordinance, the Board of Aldermen made certain findings as part of its approval (ROR 4):
 1. The proposal meets the minimum acreage requirement.
2. The proposed development is in accordance with the comprehensive plan; eliminates the Cove Manor Nursing Home, a nonconforming use, and accommodates the need for off-street parking of another nonconforming use.
3. The proposal is carefully designed for the use of waterfront property, while recognizing the existing residential neighborhoods with buffer zones, and a better flow of traffic will result.
4. The General Plans submitted sufficiently describe the proposal.
Changes in the PDD proposal voted by the Board of Aldermen as part of the approval, were (ROR 1):
1. Removal of the alteration of the size of the catering facility and the enclosure of the garden area.
2. Parking was reduced from 215 to 199.
3. Occupancy was reduced from 430 to 299.
4. Hours of operation were established at 9 a.m. to 11 a.m., Sunday through Thursday, and 9 a.m. to midnight, Friday and Saturday.
5. No separate booking events are permitted in the "garden" area.
6. The proposed .67-acre parcel containing the house was removed, leaving 3.37 acres remaining as part of the PDD.
7. A five-year moratorium on expansion, improvement or modification of the facility was instituted.
8. The Board of Aldermen reserved the right to review and extend the moratorium. CT Page 4008
From the change of zone, and amendments to the zoning ordinance adopted by the New Haven Board of Aldermen, the plaintiffs bring this appeal.
 AGGRIEVEMENT
This appeal is brought by nine plaintiffs, who reside in and own property in the "Morris Cove" section of New Haven.
This appeal is brought by nine plaintiffs, who reside in and own property in the "Morris Cove" section of New Haven.
Each claims to be aggrieved by the February 19, 2002 action of the New Haven Board of Aldermen, which established the Planned Development District (PDD), and amended the zoning ordinances.
Section 8-8 (a)(1) of the General Statutes defines "aggrieved person" to mean one "owning land that abuts, or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."
Aggrievement is jurisdictional, and a prerequisite to a trial court's jurisdiction over the subject matter of an appeal. Jolly, Inc. v. ZoningBoard of Appeals, 237 Conn. 184, 192 (1996); Winchester Woods Associatesv. Planning Zoning Commission, 219 Conn. 303, 307 (1991).
The question of aggrievement presents an issue of fact. Hughesv. Town Planning Zoning Commission, 156 Conn. 505, 508 (1968).
The plaintiff Sandra Wilson is the owner of 43 Morris Cove Road, and has been the owner throughout the time this appeal has been pending.
Testimony at trial revealed that 43 Morris Cove Road is approximately 25 feet from a portion of the land designated as a PDD.
The remaining plaintiffs, Susan C. Campion, Daniel J. Maffeo, Jr., Robert and Mary Tigelaar, Andrea M. Nardini, Cynthia Smith, Marcella A. Mascola, and David L. Kronberg, do not allege ownership of property within one hundred feet of the PDD area.
They claim to be statutorily aggrieved, by virtue of their ownership of property within the RS-2 zone from which the Planned Development District (PDD) was extracted. (Exhibit 1 2.)
The owners of land within zones to which amendments to the zoning CT Page 4009 ordinances or regulations pertain are aggrieved parties pursuant to General Statutes § 8-8 (a)(1). Timber Trails Corporation v. Planning Zoning Commission, 222 Conn. 374, 376 n. 3 (1992); Cole v. Planning Zoning Commission, 30 Conn. App. 511, 514 (1993).
In Cole, the plaintiffs challenged the adoption of regulations allowing commercial sawmills in two residential zones, subject to the special permit process.
The court held that the plaintiffs were statutorily aggrieved by virtue of their ownership of land in the affected zone. Cole v. Planning Zoning Commission, supra, 515.
Here, each of the plaintiffs is the owner of a parcel located in the residential zone, where the PDD was located by action of the New Haven Board of Aldermen.
For purposes of aggrievement, the court perceives no distinction between an amendment which would allow a use to be cited in a zone by special permit, and one which amends an existing zone, thus establishing a PDD.
It is found that all of the plaintiffs are statutorily aggrieved by virtue of their ownership of property within the RS-2 zone in which the PDD was situated.
Where a plaintiff is determined to be statutorily aggrieved, that person may challenge the adoption of regulations without the necessity of proving that injury has been sustained. Lewis v. Planning ZoningCommission, 62 Conn. App. 284, 297 (2001).
Because all of the plaintiffs are statutorily aggrieved, it is not necessary to consider whether any of the plaintiffs might also demonstrate classical aggrievement. McNally v. Zoning Commission,225 Conn. 1, 8 (1993).
 STANDARD OF REVIEW
The defendants maintain that the New Haven Board of Aldermen acts in a legislative capacity when it determines to establish a Planned Development District (PDD), while the plaintiffs contend that the process is analogous to the special permit process, and the Board of Aldermen acts in an administrative capacity.
Although § 65 of the zoning regulations contains some provisions CT Page 4010 which are clearly legislative, and others more in the nature of administrative review, the decision from which this appeal is taken is a legislative determination.
Section 65 requires the filing of a modification of an existing zone, along with general plans showing the nature and location of proposed uses.
Following approval by the City Plan Commission, the Board of Aldermen votes to amend the zoning ordinances and the zoning map, thus establishing the PDD.
It is this action, which precipitated the plaintiff's appeal.
When passing upon an application for the rezoning of property, or a change in regulations, a planning and zoning commission acts in a legislative capacity, rather than in an administrative or quasi-judicial capacity. DJ Quarry Products, Inc. v. Planning Zoning Commission,217 Conn. 447, 450 (1991); First Hartford Realty Corporation v. Planning Zoning Commission, 165 Conn. 533, 540 (1973).
This appeal does not involve any action of the City Plan Commission, undertaken pursuant to § 65.E of the zoning ordinances.
That section requires the filing of Detailed Plans, showing the details of the proposed development, following action by the Board of Aldermen, creating the PDD.
No building permit can be issued, until the City Plan Commission finds that the Detailed Plans are in accordance with the PDD Application, and the General Plans.
The review of the Detailed Plans, required of the City Plan Commission, is in the nature of a site plan review, and is administrative in nature.
However, while the review pursuant to § 65.E of the zoning ordinance is administrative in nature, the decision appealed from involves the exercise of legislative discretion by the Board of Aldermen.
In Heithaus v. Planning Zoning Commission, 258 Conn. 205, 221
(2001), a case involving the adoption of an historic district overlay zone, the Supreme Court determined that the decision of the commission was administrative. CT Page 4011
The court specifically found, however, that the decision involved a specific parcel, and had no impact on the comprehensive plan, because all of the underlying regulations and controls continued to apply. Therefore, approval of the overlay zone was the equivalent of the granting of a special permit. Heithaus v. Planning ZoningCommission, supra, 219-21.
Unlike the overlay zone discussed in Heithaus, approval of the Planned Development District (PDD) has the effect of creating a new zone.
Before any construction can commence, Detailed Plans must be reviewed by the City Plan Commission, an administrative review not required of an historic overlay zone.
The concept of a Planned Development District (PDD) is similar to that of a "floating zone," a detailed use district of undetermined location, in which the proposed kind, size and form of structures must be preapproved. Homart Development Corp. v. Planning ZoningCommission, 26 Conn. App. 212, 214 (1991).
However, unlike a floating zone, a PDD is site specific.
When determining whether to approve a floating zone application, a land use agency determines whether the zone boundaries should be altered, and the action is viewed as a legislative change of zone. Sheridan v.Planning Board, 159 Conn. 1, 17 (1969); Hawkes v. Town Plan ZoningCommission, 156 Conn. 207, 209 (1968).
Floating zones have been judicially sanctioned as legitimate planning tools, which encourage flexibility. Pleasant Valley NeighborhoodAssociation v. Planning Zoning Commission, 15 Conn. App. 110, 115
(1988); Schwartz v. Town Plan Zoning Commission, 168 Conn. 20,22-23 (1975).
When acting in a legislative capacity, a municipal land use agency is the formulator of public policy, and its discretion is much broader than that of a board sitting in an administrative or quasi-judicial capacity.Malfronte v. Planning Zoning Board, 15 Conn. 205, 209 (1967).
It has broad discretion, and is free to amend its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change. Kaufman v. ZoningCommission, 232 Conn. 122, 150 (1995). CT Page 4012
Broad discretion is vested in a municipal zoning authority when determining public need, and the manner of meeting it, because a zoning agency is closer than a court to the circumstances and conditions which create the problem, and shape the solution. Raybestos-Manhattan, Inc. v.Planning Zoning Commission, 186 Conn. 466, 470 (1982); Stiles v.Town Council, Commission, 159 Conn. 212, 219 (1970).
Conclusions reached by the commission must be upheld, if they are reasonably supported by the record. The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached. Calandro v. ZoningCommission, 176 Conn. 439, 440 (1979).
Questions concerning the credibility of witnesses, and the determination of issues of fact, are matters solely within the province of the agency. Property Group, Inc. v. Planning Zoning Commission,226 Conn. 684, 697 (1993).
Where the agency has stated reasons for its action, a reviewing court should only determine whether any of the assigned reasons are supported by the record. DeMaria v. Planning Zoning Commission, 159 Conn. 534,541 (1970).
APPROVAL OF PLANNED DEVELOPMENT DISTRICT (PDD) DID NOT VIOLATE PROVISIONS OF SPECIAL ACT
The City of New Haven exercises its zoning powers pursuant to a Special Act of the Connecticut General Assembly, first adopted in 1921, and amended in 1925.
The plaintiffs claim that § 65 of the zoning ordinances delegates powers granted to the Board of Aldermen and the New Haven Board of Zoning Appeals in a manner not authorized by the Special Act.
Section 6 of the 1925 Special Act provides that the Board of Zoning Appeals has the power to: (1) hear appeals from any order requirement or decision of an official charged with enforcing the zoning ordinances, and (2) the power to grant a variance of the terms of a zoning ordinance, after a finding of unreasonable hardship.
The Special Act also gives to the Board of Zoning Appeals the power to "hear and act upon any matter for which provision is made in the ordinance."[6]
The New Haven Zoning Ordinances, § 63, provides authority to the CT Page 4013 Board of Zoning Appeals for the granting of variances, and special exceptions.[7]
An applicant seeking to establish a Planned Development District (PDD) is not applying for a special permit, or a variance.
Instead, the applicant seeks an amendment to the zoning ordinances and the zoning map, both functions which the 1925 Special Act assigns to the Board of Aldermen.
Section 5 of the 1925 Special Act provides:
"The regulations imposed and the districts created under the provisions of this act may be changed or altered . . . by ordinance, but no such change or alteration shall be made until the proposed change shall have been referred to the zoning commission for a hearing."
Because an application for a Planned Development District (PDD) is neither a variance, nor a request for a special exception, § 65 of the zoning ordinances does not infringe upon any of the responsibilities imposed by Special Act, Charter, or Ordinance on the New Haven Board of Zoning Appeals.
The plaintiffs further claim that § 65 diminishes the powers of the Board of Aldermen, in a manner not authorized by the Special Act.
Specifically, they argue that § 65.D.2 gives to the City Plan Commission authority to frustrate the approval of a PDD, by failing to render a favorable report.
Section 65.D.2 provides that the Board of Aldermen may approve a PDD, "following a favorable recommendation of the City Plan Commission."
This, the plaintiffs contend, gives to the City Plan Commission powers reserved to the Board of Aldermen.
This argument is unavailing.
The Board of Aldermen did not act on the defendants' PDD proposal following an unfavorable recommendation from the City Plan Commission.
Both the City Plan Commission and the Board of Aldermen voted to adopt the PDD, and the Board of Aldermen exercised its discretion, in amending the recommendation of the City Plan Commission. CT Page 4014
The Board of Aldermen did not uncritically accept or rubber stamp the City Plan Commission recommendation, and did not abdicate its role as the body charged with giving final approval to the adoption of the PDD zone.
Whether the Board of Aldermen has the authority to act, pursuant to § 65 of the zoning ordinances, following an unfavorable report from the City Plan Commission, is not presented on these facts, and need not be addressed.
SECTION 65 DOES NOT VIOLATE THE REQUIREMENT OF UNIFORMITY CONTAINED IN THE SPECIAL ACT
The plaintiffs contend that the Planned Development District (PDD) voted by the Board of Aldermen violates the "uniformity" requirement of the 1925 Special Act.
Section 1 of the amended Special Act reads, in part:
The regulations shall be uniform for each class of buildings or structures throughout any district. Regulations in one or more districts may differ from those in another district.
Section 8-2 of the General Statutes contains an almost identical provision:
All regulations shall be uniform for each class or kind of buildings, structures or uses of land throughout each district, but the regulations in one district may differ from those in another district.
The plaintiff's contention is without merit.
The action of the Board of Aldermen from which this appeal was generated, has the effect of establishing a new zone, within the area covered by the PDD.
The uniformity requirement, in § 8-2, C.G.S. or in the Special Act, requires only intra-district uniformity, not conformity of the regulations applicable to a separate and distinct zoning district, with those of a neighboring district. Pleasant Valley Neighborhood Assoc. v.Planning Zoning Commission, supra, 116.
The plaintiffs' reliance on Vesekis v. Planning ZoningCommission, 168 Conn. 358 (1978), and Bartsch v. Planning ZoningCommission, 6 Conn. App. 686 (1985), is not convincing. CT Page 4015
In Vesekis, a specific property was accorded a more stringent buffer requirement, than was applicable to other properties in the same zone.Vesekis v. Planning Zoning Commission, supra, 360.
Bartsch concerned an attempt by a planning and zoning commission to attach conditions running with the land, restricting the use of a particular parcel to a medical office building.
This attempt at "contract zoning" was found to violate the uniformity provision of § 8-2, C.G.S., because the restriction did not apply to other properties in the zoning district. Bartsch v. Planning ZoningCommission, supra, 690.
Because the plaintiffs' argument seeks to compare and contrast the Planned Development District (PDD) with the adjacent RS-2 zone, it is akin to an argument that the adoption of the PDD constitutes "spot zoning."
In order to sustain a claim of "spot zoning," two separate elements must be satisfied: (1) the change in zone must affect only a small area of land, and (2) the change must be out of harmony with the comprehensive plan, for the good of the community as a whole. Langer v. Planning Zoning Commission, 163 Conn. 453, 461 (1972); Michael v. Planning Zoning Commission, 28 Conn. App. 314, 319 (1992).
The comprehensive plan of a community consists of the zoning regulations themselves. Burnham v. Planning Zoning Commission,189 Conn. 261, 267 (1983).
The area encompassed within the approved PDD is nearly twice the two-acre minimum mandated by § 65 of the zoning ordinances.
However, even conceding that the amendments apply only to a small area, the Board of Aldermen found that the proposed development is in accordance with the comprehensive plan.
The Board of Aldermen found that by establishing the PDD, it eliminated a nonconforming use, the Cove Manor Nursing Home.
The Board of Aldermen further found that the PDD would result in a better flow of traffic in the area, and accommodated the existing residential neighborhood, while providing for an appropriate use of waterfront property. CT Page 4016
Although the public hearing process elicited vehement disagreement with the proposed PDD, the Board of Aldermen's findings are amply supported by the record.
The Planned Development District (PDD) does not constitute spot zoning.
Section 65 OF THE ZONING ORDINANCES IS NOT VOID FOR VAGUENESS
The plaintiffs also contend that § 65 of the zoning ordinances is vague, and is therefore illegal.
This claim is without foundation.
A party challenging an ordinance bears a heavy burden, and must overcome the presumption of validity which attaches to every ordinance.
It is the duty of a reviewing court to sustain the validity of an ordinance, unless its invalidity has been established beyond a reasonable doubt. Queach Corporation v. Inland Wetlands Commission, 258 Conn. 178,190-92 (2001); Builders Service Corporation v. Planning ZoningCommission, 208 Conn. 267, 289-90 (1988).
Whether a specific ordinance meets the test of a constitutional exercise of police powers, must be determined in light of the circumstances of a particular case. Bartlett v. Zoning Commission,161 Conn. 24, 31 (1971).
The plaintiffs' challenge falls far short of that standard.
Section 65.A of the zoning ordinances contains specific standards which must be met, if a PDD is to be approved.
The Planned Development District (PDD) concept has been utilized by the City of New Haven as a vehicle for encouraging, development and responsible planning, in a "land poor" community.
A traffic analysis is required, and the submission of General Plans is mandated.
Furthermore, each PDD application is subject to the rigors of the public hearing process.
The PDD process allows for flexibility in planning similar to that which has been judicially sanctioned as a legitimate planning tool, in CT Page 4017 the case of a floating zone. Schwartz v. Town Plan ZoningCommission, 168 Conn. 20, 22-23 (1975).
The ordinance also requires, after the approval of a PDD by the Board of Aldermen, the filing of Detailed Plans, consistent with the application, and the General Plans.
The plaintiffs mistakenly allege that the Board of Aldermen has "unlimited discretion" in deciding whether or not to approve a Planned Development District (PDD).
Although the exercise of legislative discretion by a zoning authority is broad, the ordinance requires findings and conclusions based upon evidence obtained during public hearings.
Section 65 of the New Haven Zoning Ordinances represents a valid exercise of zoning authority, pursuant to the authority conferred by the 1925 Special Act, and is not illegal or void for vagueness.
THE RECORD SUPPORTS THE DECISION TO CREATE A PLANNED DEVELOPMENT DISTRICT (PDD)
Whether measured against the broad discretion applicable to a legislative decision, or the more limited review applicable when a municipal zoning authority acts in an administrative capacity, the record provides ample support for the decision reached by the New Haven Board of Aldermen.
There was evidence from which the Board of Aldermen could conclude that approval of the Planned Development District (PDD) would alleviate traffic and parking problems in a residential area, would better harmonize a nonconforming commercial establishment with residences located in the adjacent RS-2 zone, and would eliminate one existing nonconforming use, while providing for an appropriate use of waterfront property. (ROR 2, 4 8.)
The Board of Aldermen found that the PDD was in accordance with the comprehensive plan. The requirement of conformance with the comprehensive plan is generally satisfied, when the zoning authority votes with the intention of promoting the best interests of the entire community. EastHartford Realty Corporation v. Planning Zoning Commission,165 Conn. 533, 541 (1973); Morningside Assn. v. Planning ZoningBoard, 162 Conn. 154, 162 (1972).
Simply because a particular action benefits a single property, does not CT Page 4018 prevent it from being in conformity with the comprehensive plan. Parks v.Planning Zoning Commission, 178 Conn. 657, 661 (1979).
Nor does the imposition of a moratorium on expansion or modification of the facility exceed the authority of the zoning agency, whether exercised pursuant to § 8-2, C.G.S. or the comparable provision of New Haven's 1925 Special Act. Arnold Bernhard Co. v. Planning ZoningCommission, 94 Conn. 52, 161 (1984).
Contrary to the plaintiffs' contention that the PDD expanded the nonconforming nature of the property, the action of the Board of Aldermen eliminated one nonconforming use, while subjecting a second to regulation and control.
The decision by the Board of Aldermen is supported by substantial evidence in the record.
 CONCLUSION
The appeal of the plaintiffs Susan C. Campion, Daniel J. Maffeo, Jr., Robert Tigelaar, Mary T. Tigelaar, Andrea M. Nardini, Cynthia Smith, Sandra Wilson, Marcella A. Mascola, and David L. Kronberg, is DISMISSED.
Radcliffe, J.