[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
NATURE OF THE PROCEEDINGS
The plaintiff, People's Bank, appeals pursuant to General Statutes § 8-8 from a decision of the defendant, the Planning and Zoning Commission of the City of Shelton ("Commission"), denying the plaintiff's application to amend the Detailed Development Plans for a Planned Development District ("PDD") in a Special Development Area ("SDA").
BACKGROUND
The plaintiff, People's Bank, submitted an application to the Planning Zoning Commission of the City of Shelton on or about December 1, 1994, for an amendment to the Detailed Development Plans of PDD #18, otherwise known as 875 Bridgeport Avenue, Shelton, Connecticut. (Return of Record [ROR], Item 1: Petition for Amendment.) The plaintiff, People's Bank, is a contract licensee for a portion of real property currently occupied by an Edwards Super Food Store in PDD #18. (Amended Appeal, filed June 26, 1995.) The plaintiff obtained a license to occupy a portion of space inside the Edwards Super Food Store in order to open an "in-store" banking branch.
On January 12, 1995, and January 19, 1995, the Commission published legal notice of the public hearing, regarding the plaintiff's application, in the New Haven Register. (ROR Supp, Item 4; ROR Supp, Item 3.) The public hearing was scheduled for January 24, 1995, in the Shelton City Hall. (ROR Supp, Item 4 ; ROR Supp, Item 3.) The public hearing was conducted on January 24, 1995. (ROR, Item 8: Minutes of Meeting 1/24/95.) On February 28, 1995, the Commission postponed deliberations and a possible decision until a March 14, 1995, meeting. (ROR, Item 9: Minutes of CT Page 1428-A 28/95.)
On March 14, 1995, the defendant denied the plaintiff's application to amend the Detailed Development Plans for PDD #18 to allow People's Bank to open the "in-store" branch inside the Edwards Super Food Store. (ROR, Item 10, p. 3: Minutes of Meeting 3/14/95.) The reasons for the denial of the application are as follows: "[O]n a motion made by Comm. Cribbins seconded by Comm. Salemme it was voted to dis-approve Edwards Supermarket/People's Bank for an amendment to detailed development plans on PDD #18 for in-store branch of People's Bank for the following reasons: 1) improper expansion of activities where traditional convenience banking services are currently available in the structure such as ATM and check cashing; 2) offering active banking services in the aisle of the grocery store is inappropriate and in conflict with normal shopping activity." (Emphasis omitted.) (ROR, Item 10, p. 3.)
The plaintiff commenced this appeal on April 5, 1995. Subsequently, on May 25, 1995, the plaintiff amended its appeal (captioned "First Amended Complaint") as of right. On June 26, 1995, the plaintiff again amended its appeal (captioned "Second Amended Complaint"), pursuant to Practice Book § 176(c).
The defendant filed an answer on June 15, 1995, and filed the return of record on June 15, 1995. The plaintiff filed a brief on August 22, 1995. The defendant filed a brief on September 11, 1995. A hearing was held before the court, Sylvester, J., on November 30, 1995.
JURISDICTIONAggrievement
Aggrievement is a jurisdictional question and a prerequisite to maintaining an appeal. Winchester Woods Associates v. Planning Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953 (1991). An aggrieved person "is a person who is aggrieved by the decision of a board . . . ." General Statutes § 8-8(a)(1). A "board" is defined as "a municipal zoning commission, planning commission, combined planning and zoning commission, zoning board of appeals or other board or commission . . . ." General Statutes § 8-8(a)(2). General Statutes § 8-8(a)(1) defines aggrieved person to include "any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." CT Page 1428-B
Compliance with the classical aggrievement test encompasses a two-prong analysis: "First, the party claiming aggrievement must demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must establish that this specific, personal and legal interest has been specially and injuriously affected by the decision." Hall v. Planning Commission,181 Conn. 442, 444, 435 A.2d 975 (1980). The presence of aggrievement is an issue of fact to be determined by the trial court on appeal. Primerica v. Planning Zoning Commission,211 Conn. 85, 93, 558 A.2d 646 (1989). Lessees can be aggrieved parties even if the lease is for only a number of years and for a portion of office space. Primerica v. Planning ZoningCommission, supra, 94-95. "Unlike a lease, a license in real property is a mere privilege to act on the land of another . . . ."Clean Corp. v. Foston, 33 Conn. App. 197, 203, 634 A.2d 1200
(1993). A license is analogous to a lease even though it does not confer exclusive possession of the property.
The appeal alleges that "[t]he Plaintiff is aggrieved by the decision of the Defendant Commission in that (a) it was the unsuccessful applicant before the Defendant and (b) it has a legal interest in the subject matter of the Commission's decision in that the Plaintiff holds a license to construct and operate a mini-branch banking/savings and loan facility in a portion of the Premises approved for PDD #18 and currently occupied by the Edwards Food Warehouse Store." (Amended Appeal, filed June 26, 1995, ¶ 12.)
Plaintiff's Exhibit A, captioned "License Agreement," establishes that the plaintiff and First National Supermarkets, Inc. (owner of the Edwards Super Food Store in question), had entered into a licensing agreement for the plaintiff to open a "mini-branch banking/savings and loan association facility . . ." in the Shelton, Connecticut store. The license agreement is for a term of five years, plus two five year renewal options of the plaintiff, to commence on the "Targeted Operating Date." According to the license, the "Targeted Opening Date" was November 1, 1994.
The court finds that the plaintiff is an aggrieved party according to the classical aggrievement test. That is, the court finds that the plaintiff has a legal interest in the subject matter of the defendant's decision due to its licensing agreement with CT Page 1428-C First National Supermarkets, Inc., and because the plaintiff has been specially affected by the denial of its application for an amendment to the PDD by the defendant. For aggrievement purposes, the court in this case finds no distinction between a license and a lease.
Timeliness
A party taking an appeal must do so by commencing service of process within fifteen days from the date that notice of the decision was published. General Statutes § 8-8(b). The Commission's decision of March 14, 1995, was published on March 21, 1995, in the New Haven Register. (ROR Supp, Item 1: Published Legal Notice of Decision.) Notice of the decision was sent to the plaintiff in a letter dated March 23, 1995. (ROR, Item 11: Notice of Decision.) On April 4, 1995, the plaintiff served process upon: G. Alton Russell, Chairperson of the Commission, who accepted service for the Planning and Zoning Commission of the City of Shelton; Timothy Burke, Secretary of the Commission, who accepted service for the Planning and Zoning Commission of the City of Shelton; and on April 5, 1995, served process upon Jane Barrese, Assistant Town Clerk of Shelton, who accepted service for the city of Shelton. (Sheriff's Return, April 6, 1995.) Therefore, the appeal was commenced in a timely manner.
SCOPE OF REVIEW
"In reviewing an appeal from an administrative agency, the trial court must determine whether `the agency has acted unreasonably, arbitrarily, illegally or in an abuse of its discretion. . . ." (Citations omitted.) Smith v. Zoning Board ofAppeals, 227 Conn. 71, 80, 629 A.2d 1089 (1993), cert. denied,114 S.Ct. 1190 (1993). "The burden of proof is on the plaintiff to demonstrate that the commission acted improperly." Spero v. Boardof Appeals, 217 Conn. 435, 440, 586 A.2d 590 (1991). "[W]here a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement of the commission." (Alterations in original.) West HartfordInterfaith Coalition, Inc. v. Town Council, 228 Conn. 498, 514,636 A.2d 1342 (1994). "The reviewing court ought only . . . determine whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . ." Id., 514-15. "[W]here there is a failure to comply with the CT Page 1428-D obligation to state reasons, the action is not deemed void but the court must search the record to see whether the board was justified in its decision." Id., 515. Where an administrative agency gives reasons for the denial of land use application, the denial must be upheld if even one of the reasons given is sufficient to support it. Frito-Lay, Inc. v. Planning and Zoning Commission, 206 Conn. 554,576, 538 A.2d 1039 (1988) (special permit); Burnham v. Planning Zoning Commission, 189 Conn. 261, 265, 455 A.2d 339 (1983) (zone change); Goldberg v. Zoning Commission, 173 Conn. 23, 26,376 A.2d 385 (1977) (site plan). "If any of the reasons supports the action of the commission, the plaintiff must fail in his appeal."Goldberg v. Zoning Commission, supra, 26.
ARGUMENTS
The appeal alleges that the decision of the defendant was illegal, arbitrary, and an abuse of discretion for the following reasons: "a. Banks and grocery stores are permitted uses in PDD #18 and there is no regulatory requirement that they be contained in separate and distinct structures; b. the decision of the Commission is in conflict with the PDD Statement; c. The decision of the Commission is based upon speculative fears and it is not supported by the evidence; d. The Plaintiff's application is in full conformity with the PDD Statement; e. The Defendant's decision constitutes an impermissible attempt to regulate and restrict the use of the Premises for a permitted use in contravention of the PDD Statement, the Connecticut General Statutes and the United States Constitution; f. The Commission acting in an administrative capacity failed to approve the Plaintiff's application although Plaintiff's proposal complied with the PDD Statement approved by the Defendant; g. Neither of its reasons for denial stated by the defendant in its minutes form a sufficient basis for such denial; h. the Defendant exceeded the scope of its authority, powers and duties as established by Section 8 of the Connecticut General Statutes." (Appeal, June 26, 1995, ¶ 11.)
More specifically, the gravamen of the plaintiff's claim is that the Commission was acting in an administrative capacity, and therefore, the commission was limited to determining whether the proposed use of the property was expressly permitted under the zoning regulation. (Plaintiff's Brief, pp. 9-12.) The defendant counters that it was acting in a legislative capacity, and that even if it was acting in an administrative capacity, it could deny the application based on general considerations. The defendant further argues that the PDD regulations do not provide for a CT Page 1428-E "mixed-use," and thereby, any use that is not expressly permitted is prohibited by the zoning regulations. (Defendant's Brief, pp. 3-4.)
DISCUSSION
The Planned Development District ("PDD") is a relative newcomer to Connecticut land use case law. See Mileski v. Planning Zoning Commission, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 030284 (July 24, 1990, Fuller, J.). "Section 34 [of the zoning regulations of the City of Shelton] has a three stage procedure to establish a Planned Development District. The first step is designation of the subject property as an SDA [Special Development Area]. The second step is an informal PDD application with a Basic Development Plan. Sections 34.4, 34.5 and 34.6. The third and final step is a formal or final application for a PDD with Detailed Development Plans. Section 34.7 and 34.8. . . . An SDA is defined in section 21.2 and amounts to a special district which can be placed upon property in addition to or overlapping the existing zoning classification or district of the subject property. It is merely a preliminary step to the option of developing the property as a PDD. An SDA does not change the zone of the underlying property or grant any right to develop the property for any uses that are not already permitted in the underlying zone." Shelton Square v. Planning Commission, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 033652 (April 24, 1991, Fuller, J.).
The application for the development of a PDD, although not within the statutes, is analogous to the application for a site plan or special permit (special exception). Mileski v. Planning Zoning Commission, supra (analogizing PDD application to a site plan application, or a special permit application, and emphasizing the inability to identify "exactly what type of zoning approval a PDD is or the statutory authority for it."). Likewise, the application for an amendment to the Detailed Development Plans for a PDD is also analogous to a site plan application or special permit application.[1] The Detailed Development Plans include, among other things, a site plan. Shelton Zoning Regulations, Section 34.7(a); see also Mileski v. Planning Zoning Commission, supra (noting that the Detailed Development Plans include a site plan, and stating that step two of the PDD procedure, submission of the Detailed Development Plans, is technically not a site plan application under the statutes, nor a special permit application). Although not dispositive, the court notes that the regulations governing PDDs, Section 34, are included in the Shelton Zoning CT Page 1428-F Regulations under "Chapter III — Site Plans and Special Exceptions." (Emphasis omitted.) The court's analysis must turn to the standards that pertain to the granting of a special permit or site plan.
"The terms special permit and special exception have the same legal import and can be used interchangeably. . . . A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values." Whisper Wind Development Corp. v. Planning ZoningCommission, 32 Conn. App. 515, 523, 630 A.2d 108 (1993), aff'd.,229 Conn. 176, 640 A.2d 100 (1994). When acting upon a special permit (special exception) a commission is acting in an administrative capacity, and the zoning commission's "function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and statutes are satisfied." (Citations omitted; internal quotation marks omitted.) Felsman v. ZoningCommission, 31 Conn. App. 674, 678, 626 A.2d 825 (1993), citingA.P. W. Holding Corporation v. Planning Zoning Board, 167 Conn. 182,185, 355 A.2d 91 (1974).
"The use of site plans in zoning matters is authorized by General Statutes § 8-3(g). It provides in part: `The zoning regulations may require that a site plan be filed with the commission . . . to aid in determining the conformity of a proposed building, use or structure with specific provisions of such regulations . . . A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning . . . regulations.'" (Alterations in original.) TLC Development,Inc. v. Planning Zoning Commission, 215 Conn. 527, 529-30,577 A.2d 288 (1990). "In ruling upon a site plan application, the planning commission acts in its ministerial capacity, rather than in its quasi-judicial or legislative capacity. It is given no independent discretion beyond determining whether the plan complies with the applicable regulations. . . . The Board is under a mandate to apply the requirements of the regulations as written." (Citations omitted.) Allied Plywood, Inc. v. Planning ZoningCommission, 2 Conn. App. 506, 512, 480 A.2d 584, cert. denied,194 Conn. 808, 483 A.2d 1098 (1984).
"The commission cannot require the applicant to meet CT Page 1428-G conditions not contained in the regulations themselves." GraceCommunity Church v. Planning Zoning Commission, 42 Conn. Sup. 256,262, 615 A.2d 1092 (Super.Ct. 1992), aff'd, 30 Conn. App. 765,622 A.2d 591, cert. denied, 226 Conn. 903, 625 A.2d 1375
(1993), citing DeMaria v. Planning Zoning Commission, 159 Conn. 534,540-41, 271 A.2d 105 (1970). "A special permit can be denied only for failure to meet specific standards in the regulations, and not for vague, general reasons." Grace Community Church v. Planning Zoning Commission, supra, 262, citing DeMaria v. Planning Zoning Commission, supra, 541 (same); see also Whisper WindDevelopment Corp. v. Planning Zoning Commission, supra, 32 Conn. App. 526
(Dupont, C.J., dissenting)(same).
In Whisper Wind Development Corp. v. Planning ZoningCommission, the Connecticut Appellate Court held that the trial court properly determined that the plaintiff's failure to meet general health, safety and welfare requirements set forth in the zoning regulations of the town provided an adequate basis for the zoning commission's denial of the special permit application, even though the plaintiff's application complied with the detailed technical requirements of the regulations. Whisper WindDevelopment Corp. v. Planning Zoning Commission, supra, 32 Conn. App. 515. The holding in Whisper Wind, however, is premised on the existence of general criteria in the local zoning regulations. In that case the local zoning regulations applicable to special permits required that "the Commission take into consideration the public health, safety and welfare . . . ." (Emphasis omitted.) Id., 518 n. 1. As such, the zoning commission was able to invoke a particular regulation that required the commission to consider certain enumerated general considerations.
On October 29, 1991, the defendant, Shelton Planning Zoning Commission, approved the premises at 875 Bridgeport Avenue, Shelton, Connecticut, as a PDD. (ROR, Item 2: Statement of PDD 5/21/91.) PDD #18 was approved pursuant to Section 34, Shelton Zoning Regulations. Here, the Planning and Zoning Commission of the City of Shelton denied the plaintiff's application for an amendment of the Detailed Development Plans of PDD #18 for the following reasons: "1) improper expansion of activities where traditional convenience banking services are currently available in the structure such as ATM and check cashing; 2) offering active banking services in the aisle of the grocery store is inappropriate and in conflict with normal shopping activity." (Emphasis omitted.)(ROR, Item 10, p. 3.) CT Page 1428-H
The court finds these reasons are arbitrary and unsupported by any zoning regulation of the City of Shelton. Smith v. ZoningBoard of Appeals, supra, 227 Conn. 80. The PDD #18, part V, in pertinent part states: "The following uses shall be the only uses permitted within this Planned Development District: . . . C. Stores and other buildings and structures where goods are sold or service is rendered primarily at retail . . . F. Banks and other financial institutions . . . ." (ROR, Item 2, p. 2.)
This court's standard of review is limited to determining "whether the assigned grounds [of the Commission] are reasonably supported by the record and whether they are pertinent to theconsiderations which the authority was required to apply under the zoning regulations. . . ." (Emphasis added.) West HartfordInterfaith Coalition, Inc. v. Town Council, supra, 228 Conn. 514-15. The collective statement of the Commission does not address any specific, pertinent standard in the zoning regulations that the plaintiff has not complied with. (ROR, Item 10, p. 3.) Furthermore, nowhere in PDD #18 or the zoning regulations is it required that the permitted uses in PDD #18 be contained in separate and distinct structures. The Commission has not stated adequate reasons for the denial of the plaintiff's application, but the court is aware of its obligation to scour the record to determine whether the record supports the decision of the Commission. West Hartford Interfaith Coalition, Inc. v. TownCouncil, supra, 228 Conn. 515. The court, however, finds no justification for the denial of an "in-store" banking branch in PDD #18.
The court finds that the Commission's reasons required the plaintiff to comply with conditions not contained in the regulations. Grace Community Church v. Planning ZoningCommission, supra, 262 (special exception can only be denied for failure to meet specific standards in the regulations, and not for vague, general reasons), citing DeMaria v. Planning ZoningCommission, supra, 541 (same); see also Allied Plywood, Inc. v.Planning Zoning Commission, supra, 2 Conn. App. 512 (same for site plan). Even in Whisper Wind the planning and zoning commission denied the special permit pursuant to express, although general, considerations in the regulations. Whisper WindDevelopment Corp. v. Planning Zoning Commission, supra, 32 Conn. App. 518
n. 1.
The Commission argues that it may deny the application based CT Page 1428-I upon Section 23.2 which states that "[a]ny use not specified in SCHEDULE A as permitted is prohibited." (Defendant's Brief, p. 3.) "Schedule A — Permitted Uses" is a schedule of zoning districts which itemizes permitted uses in each district. The defendant's argument is unpersuasive because PDD #18 was approved pursuant to Section 34 of the zoning regulations, and PDD #18 provides that banks and other financial institutions are a permitted use within PDD #18. (ROR, Item 2, p. 2.)
CONCLUSION
The regulations in effect at the time of the application did not contain any provision that would support the collective statement of the Commission when it denied the application. In addition, PDD #18 (promulgated pursuant to Section 34) permits banks and other financial institutions in PDD #18, and PDD #18 or the regulations do not prohibit the permitted uses from existing within the same structure.
Therefore, pursuant to General Statutes § 8-8(1), the court sustains the appeal, and orders the Commission to grant the plaintiff's application for amendment to the Detailed Development Plans of PDD #18, to allow for the inclusion of an "in-store" branch of People's Bank in the Edwards Super Food Store located in PDD #18.
 Joseph H. Sylvester Judge