NANCY J. BARBIERI *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF EAST WINDSOR ET AL.
(AC 23618)

Lavery, C. J., and Bishop and Mihalakos, Js.

Argued September 8—officially released November 11, 2003

*Paul W. Smith*, for the appellant (plaintiff).

*Stephen T. Penny*, town attorney, for the appellee (named defendant).

*John H. Parks*, for the appellee (defendant Rye Street Business Park, LLC).

Opinion

LAVERY, C. J. The plaintiff, Nancy J. Barbieri, appeals from the judgment of the trial court dismissing her appeal from the decision of the defendant planning and zoning commission of the town of East Windsor (commission), approving the application of the defendant Rye Street Business Park, LLC (Rye), for a site plan modification for its property. On appeal, the plaintiff claims that the court improperly (1) construed the town's zoning regulations as permitting a gravel driveway and a portion of a gravel parking area to be located in a required buffer zone, and (2) concluded that the potential increase in use of the right-of-way that provides access to the subject property is not an illegal expansion of a nonconforming use. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of the plaintiff's appeal. Rye owns two contiguous lots in an industrial zone on Rye Street in East Windsor. For many years,

Rye has operated an industrial business on the lot at 95 Rye Street. Both of Rye's lots are rear lots, which have no public road frontage. The only way to access the lots is by a right-of-way over a fifty foot strip of land owned by a third party.[1] That right-of-way runs through a residential zone, which is adjacent to Rye's lots. The plaintiff owns property in the residential zone at 99 Rye Street. The plaintiff's property is adjacent to the right-of-way and abuts Rye's industrial zoned lots.

In October, 2000, Rye filed an application with the commission for a site plan modification for its 95 Rye Street property. The application proposed an addition to the existing building and, to comply with space regulations, the merger of the two industrial zoned lots. After a public hearing, the commission, on February 13, 2001, approved Rye's application for a site plan modification pursuant to General Statutes § 8-3 (g)[2] and the town's zoning regulations.

On March 12, 2001, the plaintiff appealed from the commission's decision to the trial court pursuant to General Statutes § 8-8 (b).[3] After a hearing, the court issued a memorandum of decision in which it upheld the commission's decision, concluding that the plaintiff

---

[1] The third party owner of the right-of-way is not a party in this case.

[2] General Statutes § 8-3 (g) provides in relevant part: "The zoning regulations may require that a site plan be filed with the commission . . . to aid in determining the conformity of a proposed building, use or structure with specific provisions of such regulations. . . . A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning or inland wetlands regulations. . . . A decision to deny or modify a site plan shall set forth the reasons for such denial or modification. . . ."

[3] General Statutes § 8-8 (b) provides in relevant part: "Except as provided in subsections (c), (d) and (r) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board, including a decision to approve or deny a site plan pursuant to subsection (g) of section 8-3, may take an appeal to the superior court for the judicial district in which the municipality is located. . . ."

General Statutes § 8-8 (a) (2) includes "planning and zoning commission" within its definition of the word "board" in § 8-8 (b).

had not "sustained her burden of showing that the commission acted unreasonably in approving the site plan and, in particular, approving the buffer area as set forth in the plan." Accordingly, on August 29, 2002, the court rendered judgment dismissing the plaintiff's appeal. On September 18, 2002, the plaintiff filed a petition for certification to appeal to this court, which we granted. Thereafter, the plaintiff filed the present appeal.

I

The plaintiff first claims that the court improperly construed the town's zoning regulations as permitting a gravel driveway and a portion of a gravel parking area to be located in a required buffer zone. We disagree.

At the outset, we set forth our standard of review. A zoning commission's authority in ruling on a site plan is limited. A site plan is "filed with a zoning commission or other municipal agency or official to determine the conformity of a proposed building, use or structure with specific provisions of the zoning regulations." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 2.2, p. 18. "In ruling upon a site plan application, the planning commission acts in its ministerial capacity, rather than its quasi-judicial or legislative capacity. It is given no independent discretion beyond determining whether the plan complies with the applicable regulations." (Internal quotation marks omitted.) *Berlin Batting Cages, Inc.* v. *Planning & Zoning Commission,* 76 Conn. App. 199, 221, 821 A.2d 269 (2003).

"Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court had to decide whether the board correctly interpreted the section [of the regula-

tions] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal. . . . [U]pon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons . . . . We, in turn, review the action of the trial court." (Citations omitted; internal quotation marks omitted.) *Spero* v. *Zoning Board of Appeals*, 217 Conn. 435, 440, 586 A.2d 590 (1991); accord *Irwin* v. *Planning & Zoning Commission*, 244 Conn. 619, 627–28, 711 A.2d 675 (1998). "The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision." (Internal quotation marks omitted.) *Pleasant View Farms Development, Inc.* v. *Zoning Board of Appeals*, 218 Conn. 265, 269–70, 588 A.2d 1372 (1991).

"Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight . . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when [an] agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law. . . . These principles apply equally to regulations as well as to statutes. . . . A court that is faced with two equally plausible interpretations of

regulatory language, however, properly may give deference to the construction of that language adopted by the agency charged with enforcement of the regulation." (Citations omitted; internal quotation marks omitted.) *Wood* v. *Zoning Board of Appeals*, 258 Conn. 691, 698–99, 784 A.2d 354 (2001). Because the interpretation of East Windsor's zoning regulations presents a question of law, our review of the plaintiff's claim is plenary.

Finally, "[a] zoning regulation is legislative in nature, and its interpretation involves the principles of statutory interpretation. . . . We seek to determine the meaning of the regulations by looking to the words of the regulation, to the history of its enactment, including the circumstances surrounding its enactment, to the public policy it was designed to implement and to its relationship to other regulations governing the same general subject matter." (Citation omitted.) *Smith-Groh, Inc.* v. *Planning & Zoning Commission*, 78 Conn. App. 216, 232, 826 A.2d 249 (2003); see also *Bhinder* v. *Sun Co.*, 263 Conn. 358, 367, 819 A.2d 822 (2003). With those principles in mind, we now turn to the plaintiff's claim.

The plaintiff contends that the court improperly construed the town's zoning regulations as permitting a gravel driveway and a portion of a gravel parking area to be located in a required buffer zone because the regulations require the buffer to be maintained as a grass strip.[4] Section 9.2.1 of the East Windsor zoning

---

[4] In approving Rye's application for a site plan modification, the commission determined that the proposed gravel driveway and the existing gravel parking area did not violate the buffer zone requirement in the regulations.

The court agreed with the commission's determination, stating that "[t]he record indicates that the site plan calls for a gravel driveway and parking area in the buffer area in order to service the underground septic system. The record also indicates that [Rye] plans to plant an additional fifty trees to improve the area. There is no evidence that the buffer would contain any prohibited structure. The commission determined that the gravel area would not violate the requirement of a buffer area. On the basis of the foregoing facts as set forth in the record, the court finds that the plaintiff

regulations requires a 100 foot wide buffer zone to be maintained between an industrial zone and a residential zone. That section further provides that "[t]his buffer zone shall be maintained on a strip with a planting of at least two staggered rows of evergreen trees, not less than five feet in height, on 20 foot centers, and at least 1 row of evergreen shrubs on 6 [foot] centers, with minimum height of 3 [feet], on the outside edge of the buffer zone." East Windsor Zoning Regs., § 9.2.1. Section 4.1.7 of the regulations defines "buffer zone" as "[a] strip of land, unoccupied by buildings, structures or pavements; *and maintained as a grass strip with plantings of trees and shrubs.*" (Emphasis added.)

It is undisputed that a gravel access driveway and a portion of an existing gravel parking area are located in the required buffer zone in the subject site plan. It also is undisputed, however, that pursuant to the zoning regulations, gravel driveways and parking areas are not "buildings, structures or pavements," which are expressly prohibited from being located in buffer zones.[5] The only remaining issue, therefore, is whether the regulations prohibit locating anything in a buffer zone except grass, trees and shrubs, as the plaintiff contends.

On the basis of our review of the record and the relevant provisions of the zoning regulations, we conclude that the regulations are not intended to be so narrow as to exclude everything except grass, trees and shrubs from buffer zones. If the zoning authorities had intended to proscribe everything except grass, trees

has not sustained her burden of showing that the commission acted unreasonably in approving . . . the buffer area as set forth in the [site] plan."

[5] Section 13.5.2 (j) (5) of the East Windsor zoning regulations provides in relevant part: "All disturbed site areas not covered by *paving*, roofs, or mulching for trees or shrubs shall contain suitable ground cover consisting of grass, turf, myrtle, stone, *gravel* or appropriate substitutes. . . ." (Emphasis added.) See also §§ 6.1.4 (g) and (h) of the East Windsor zoning regulations.

and shrubs from buffer zones, it would have been unnecessary and even gratuitous to expressly prohibit "buildings, structures or pavements" from those areas. Moreover, it makes little sense for § 4.1.7 to prohibit only pavement if the intent of that provision is to prohibit gravel, stone and sand as well, especially when other provisions in the regulations use more encompassing language.[6]

We agree with the defendants that the more reasonable interpretation of the buffer zone provisions in the regulations is that such zones are intended to be, on the whole, "green" *or* landscaped areas unoccupied by buildings, structures and pavements.[7] Moreover, "[a] court that is faced with two equally plausible interpretations of regulatory language, however, properly may give deference to the construction of that language adopted by the agency charged with enforcement of the regulation." (Internal quotation marks omitted.) *Wood* v. *Zoning Board of Appeals,* supra, 258 Conn. 699. In the present case, the site plan shows the buffer zone at issue as a mostly grassy, landscaped area in which no buildings, structures or pavements are located. In fact, the record indicates that Rye intends to plant an additional fifty trees to improve the buffer zone.[8]

We conclude that the court properly construed the town's zoning regulations as permitting a gravel driveway and a portion of a gravel parking area to be located in the required buffer zone.

---

[6] Sections 8.3.5 and 9.2.3 of the East Windsor zoning regulations use the term "total impervious coverage," which includes "buildings, parking lots, access drives, and other impervious surfaces."

[7] That interpretation is supported by § 13.5.2 (j) (3) of the East Windsor zoning regulations, which provides that in general, buffer strips between zoning districts are to be "grassed areas or landscaped strips."

[8] We also note that the gravel access driveway is necessary to service an underground septic system, which only will be done approximately once or twice a year.

## II

The plaintiff also claims that the court improperly concluded that the potential increase in use of the right-of-way that provides access to the subject property is not an illegal expansion of a nonconforming use. Specifically, she argues that the potential increase in the amount of industrial traffic using the right-of-way is an illegal expansion of the nonconforming use "because it is caused not just by an increase in the industrial business at the site, but [also by] an expansion of the site's capability to host industrial use." We disagree.

Even if we assume, without deciding, that the plaintiff is correct in her assertion that the right-of-way is a nonconforming use,[9] she nevertheless cannot prevail on her claim because the potential increase in the use of the right-of-way is not an illegal expansion of that use, but rather a mere intensification of the original use. "The prohibition of expansion of nonconforming uses applies only to the aspect of the use or structure which is nonconforming." R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 52.1, p. 548. "[A] mere increase in the amount of business done pursuant to a nonconforming use is not an illegal expansion of the original use. . . . A change in the character of a use, however, does consti-tute an unlawful extension of the prior use. . . . In deciding whether the current activity is within the scope of a nonconforming use consideration should be given to three factors: (1) the extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect

---

[9] The court and the commission both determined that the use of a right-of-way in a residential zone to access an industrial zoned rear lot is not a nonconforming use because the zoning regulations do not expressly prohibit such a use.

upon the neighborhood resulting from differences in the activities conducted on the property." (Citations omitted; internal quotation marks omitted.) *Hall* v. *Brazzale*, 31 Conn. App. 342, 348, 624 A.2d 916, cert. denied, 227 Conn. 905, 632 A.2d 691 (1993).

In the present case, the right-of-way has been used as a means of access to the two industrial zone lots since 1975. As stated previously, the lots are rear lots, which have no public road frontage and, therefore, are nonconforming. As part of their status as legally nonconforming lots, each lot is permitted to use the right-of-way for access. Rye presently operates an industrial business in a 32,140 square foot building on one of the lots and uses the right-of-way as its only means of access to that lot. Pursuant to the zoning regulations, Rye also is entitled to use the second industrial zoned lot for industrial purposes because it is a preexisting nonconforming lot. Unquestionably, Rye is entitled to construct an industrial building on that lot as long as it is, otherwise, in accordance with the zoning regulations. In addition, Rye is permitted to use the right-of-way for access to that lot.

Rye's application for a site plan modification proposes a 15,158 square foot addition to the existing building and, to comply with space regulations, the merger of the two industrial zoned lots.[10] The right-of-way will continue to be used for access once the lots are merged and the existing building is expanded. It is undisputed that the right-of-way is not being expanded physically in any way. It therefore will be the same type of industrial use in the same context. There is nothing in the record to indicate that there will be any change in the

---

[10] We note that the merger of the two industrial zoned rear lots, in effect, decreases the nonconformity of those lots with respect to required frontage on a public highway because the merger decreases the number of nonconforming lots.

*nature and purpose* of the *original* use of the right-of-way.

Although the plaintiff attempts to distinguish the current use of the right-of-way from that proposed in the site plan by emphasizing a quantitative feature of that use, "[s]uch changes cannot reasonably be said to involve differences in the character of the nonconforming use rather than increases in the volume of business within the scope of the original use." *Zachs* v. *Zoning Board of Appeals*, 218 Conn. 324, 332–33, 589 A.2d 351 (1991). "More of the same . . . cannot be the basis for a finding of an unlawful expansion of a prior existing nonconforming use. It is, instead, the essence of a lawful intensification of a prior existing nonconforming use. Thus, in *Helicopter Associates, Inc.* v. *Stamford*, [201 Conn. 700, 519 A.2d 49 (1986)], our Supreme Court concluded that 'merely casual' use of property as a heliport at the time of a zone change prohibiting such use was nonetheless sufficient to afford the property owner the right to continue to use his property as a heliport on a regular basis, as long as the plaintiff's use did not alter its classification for state licensing purposes." *Hall* v. *Brazzale*, supra, 31 Conn. App. 349.

Finally, neither the commission nor the court made any findings in regard to the adverse effects on the residential neighborhood from the potential increase in the use of the right-of-way beyond noting that the use likely would increase to some degree. Moreover, the evidence in the record on that issue is sparse,[11] and what little there is does not indicate that the increased use of the right-of-way will result in adverse effects on the neighborhood so drastic as to warrant a finding that

---

[11] The record discloses that no expert testimony on the effect of the potential increase in the use of the right-of-way was presented by the parties before the commission. See *Zachs* v. *Zoning Board of Appeals*, supra, 218 Conn. 333.

the nonconforming use has been expanded beyond its original scope.

We conclude that the court properly determined that the potential increase in use of the right-of-way is not an illegal expansion of a nonconforming use.

The judgment is affirmed.

In this opinion the other judges concurred.