CATHERINE BLAKEMAN ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE CITY OF SHELTON
(AC 23825)

Lavery, C. J., and Schaller and DiPentima, Js.

---

Argued December 8, 2003—officially released May 4, 2004

*Ian A. Cole*, with whom was *Dominick J. Thomas, Jr.*, for the appellants (plaintiffs).

*Thomas J. Welch*, with whom, on the brief, was *John H. Welch, Jr.*, for the appellee (defendant).

*Opinion*

LAVERY, C. J. The plaintiffs, Catherine Blakeman and Huntington Homes, Inc.,[1] appeal from the judgment of the trial court rendered in favor of the defendant, the planning and zoning commission of the city of Shelton. On appeal, the plaintiffs claim that the court improperly dismissed their zoning appeal because (1) their right to build twenty-four condominium units did not expire automatically at the conclusion of the five year time period set forth in the Shelton planned development district regulations and (2) the defendant improperly relied on the report of the fire chief of the city of Shelton, which was received more than three months after the close of the public hearing. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are necessary for the resolution of the plaintiffs' appeal. At some point in 1988, the plaintiffs submitted a petition for the creation of a planned development district (district).[2]

[1] The court found that Blakeman was the owner of the subject property and that Huntington Homes, Inc., was the applicant and developer of the planned development district at issue. Additionally, the court found that both plaintiffs had produced evidence of aggrievement and timely service on the defendant. See General Statutes § 8-8.

[2] Section 34.1 of the Shelton zoning regulations provides that such districts may be established by the defendant within a special development area delineated on the zoning map. The defendant may establish districts when it finds it necessary and appropriate for the following purposes:

"To permit tracts of land to be developed, redeveloped and improved as [a] harmonious design unit of stable character, consistent with the character of the Town and the long range improvement of the neighborhood and consistent with any comprehensive plan of development adopted by the

Accompanying the petition was an application for certain development plans (plans). On December 6, 1988, the defendant approved the basic plans. The plans included the construction of twenty-four condominium units. The defendant approved the detailed plans on August 13, 1993, and the tract of land was rezoned as a district.[3]

Section 34.11 of the Shelton zoning regulations requires that the development plans authorized by the defendant be completed within five years of the effective date of the creation of the district. The regulations also permit the defendant to authorize, on a request made by the applicant, a one year extension for good cause. More than five years had passed from the effective date of the district[4] and, as a result, on August 1, 2000, the plaintiffs submitted a second application,

[defendant] for the Special Development Area, when such tracts are of sufficient size to accommodate such design units and when another zoning district could not be appropriately established to accomplish such purposes. . . .

"To permit the use of land, buildings and other structures for purposes that would be beneficial to and consistent with the character of the Town and the long range improvement of the neighborhood and consistent with any comprehensive plan of development adopted by the [defendant] for the Special Development Area, when such uses are located on tracts of sufficient size to accommodate harmonious design of buildings, structures and facilities in connection with the use and when another zoning district could not be appropriately established to accomplish such purposes."

[3] Obtaining approval for a district consists of a three step process. "The first step [is] location of the property within a [special development area]. The second step [is] an informal application with a Basic Development Plan. The third and final step is a formal or final application for a [district] with Detailed Development Plans . . . ." *Mileski* v. *Planning & Zoning Commission*, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 030284 (July 24, 1990).

[4] On the basis of the record, it does not appear that an extension for good cause was granted, despite the suggestion at oral argument that the plaintiffs had sought and obtained such an extension. Whether such an extension was ever sought or obtained is not a factually significant issue; it is undisputed that the development was not completed within the applicable five year time frame set forth in the regulations or within the time allotted by any extension for good cause granted by the defendant.

entitled "a modification of detailed development plans of [the district]." The second application contained a revised plan that was similar to the 1993 plans, with only minor building design and architectural changes.

The defendant held public hearings for the second application on September 26 and October 10, 2000. On January 16, 2001, the defendant voted to approve the second application, subject to several conditions, including the reduction of the number of condominium units from twenty-four to eighteen.

The plaintiffs appealed to the Superior Court from the defendant's decision. The plaintiffs first argued that the regulations illegally had created a zone that terminated at the conclusion of the five year period. The defendant responded by claiming that the regulations simply provided authorization to rezone the district. The court agreed with the defendant and stated that the regulations authorized the defendant, "in its discretion, to delete the [district] and establish some other zone in its place. Although the [defendant] . . . did not elect to proceed in such fashion, it would have been well within its authority to do so . . . ."

The plaintiffs next argued that the defendant had no discretion to modify the second application. The court, relying on three prior Superior Court cases, analogized the application to that of a special permit or a site plan and concluded that the defendant was acting in its administrative capacity.[5] The court stated that the defendant had discretion to determine if the second application met all of the standards set forth in the regulations and that it would determine if the reasons set forth by the defendant were pertinent and reasonably supported by the record. The court agreed that the defendant had acted within its discretion in modifying the plaintiffs' application, and dismissed the

---

[5] See part I B of this opinion.

appeal and rendered judgment accordingly.[6] The plaintiffs appealed to this court. Additional facts will be set forth as necessary.

I

The plaintiffs first claim that their right to build twenty-four condominium units did not expire automatically at the conclusion of the five year time period set forth in the regulations. Specifically, they argue that absent any affirmative action taken by the defendant after the five year period lapsed, the defendant had no option but to approve the application without any modification. We disagree and conclude that the plaintiffs' plans became null and void at the expiration of the time frame contained in the regulations and that the defendant did not abuse its discretion or act in an illegal manner when it approved eighteen condominium units rather than twenty-four.

A

At the outset, it will be helpful to identify what the plaintiffs are *not* challenging on appeal. The plaintiffs do not contest the validity of the district regulations or the statutory authority authorizing the creation of a district. Additionally, the plaintiffs do not argue that the time frame for completion of the development is invalid on its face.[7] Those questions are not before us,

---

[6] The court granted the plaintiffs' motion to reargue, then affirmed the memorandum of decision.

[7] We agree with the description of such a district as "a creature not normally spotted in Connecticut's jurisprudential forests." (Internal quotation marks omitted.) *Mileski* v. *Planning & Zoning Commission,* Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 030284 (July 24, 1990).

The Supreme Court of Minnesota, acknowledging that there were few cases nationwide that addressed planned development districts, has stated: "Planned development zoning is a modern non-Euclidean concept which seeks to meet current needs and also permit adjustment to changing demands by allowing a use which does not correspond to those permitted in any single type of district. . . . Planned development usually involves a single use on a relatively small tract. The biggest problem is the possibility

and we do not address them. "We do not give advisory opinions, nor do we sit as roving commissions assigned to pass judgment on the validity of legislative enactments. Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function." (Internal quotation marks omitted.) *Bell Atlantic Mobile, Inc.* v. *Dept. of Public Utility Control,* 253 Conn. 453, 490, 754 A.2d 128 (2000).

In their reply brief, the plaintiffs clearly and succinctly identified the essence of their claim: "[T]he plaintiffs' argument assumes the validity of the regulation and is merely challenging the [defendant's] erroneous interpretation of the provision, i.e., that if the project is not completed, the right to build it automatically lapses and the [defendant] has broad discretion to change the standards of the zone whenever the applicant seeks re-authorization to build the project."

Having set out the parameters of the plaintiffs' claim, we now establish the legal principles and standard of review that guide our resolution of the issue. "A zoning regulation is legislative in nature, and its interpretation involves the principles of statutory interpretation. . . . *We seek to determine the meaning of the regulations by looking to the words of the regulation,* to the history of its enactment, including the circumstances surrounding its enactment, to the public policy it was designed to implement and to its relationship to other regulations governing the same general subject matter." (Emphasis added; internal quotation marks omitted.) *Barbieri* v. *Planning & Zoning Commission,* 80 Conn. App. 169, 174, 833 A.2d 939 (2003).

---

of 'spot-zoning.' " (Citations omitted.) *Amcon Corp.* v. *Eagan,* 348 N.W.2d 66, 72–73 (Minn. 1984); see also 2 K. Young, Anderson's American Law of Zoning (4th Ed. 1996) §§ 11.09 and 11.10, pp. 456–60.

We must interpret the Shelton zoning regulations and, therefore, our review is plenary. See id. "We interpret and construe local ordinances according to the principles of statutory construction. . . . We are aware of the principles of statutory construction as set forth in *State* v. *Courchesne*, 262 Conn. 537, 577, 816 A.2d 562 (2003) (en banc). The extratextual sources referenced in *Courchesne* to guide us in our reasoned search for the intent of a legislative body in enacting an ordinance are not present here. *We therefore must focus on the language of the regulation.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Azzarito* v. *Planning & Zoning Commission*, 79 Conn. App. 614, 622–23, 830 A.2d 827, cert. denied, 266 Conn. 924, 835 A.2d 471 (2003).

The language of § 34.11 provides in relevant part that the "*development authorized by the [defendant] shall be completed within 5 (five) years from the effective date of the District*, except that the [defendant] may extend the time for completion for one (1) year periods after public hearing for good cause demonstrated to the satisfaction of the [defendant]; *otherwise the [defendant] shall be deemed authorized by the owner or owners of land within the District to amend these Regulations and the Zoning Map, deleting the [district] and establishing for such land the provisions of another zoning district.*" (Emphasis added.)

"A court must interpret a statute as written . . . and it is to be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation. . . . The language of the ordinance is construed so that no clause or provision is considered superfluous, void or insignificant. . . . Common sense must be used in construing the regulation, and we assume that a rational and reasonable result was intended by the local legislative body." (Internal quotation marks omitted.) *Balf Co.* v. *Plan-*

*ning & Zoning Commission*, 79 Conn. App. 626, 636, 830 A.2d 836, cert. denied, 266 Conn. 927, 835 A.2d 474 (2003). Our interpretation of § 34.11 leads us to the conclusion that on the expiration of the applicable time frame, two events occur: first, the development plan becomes void, and, second, the defendant is authorized to rezone the district if it so chooses.

We note that such an interpretation is in accord with the model regulations drafted by one commentator. Those model regulations state: "The development schedule included in the approved plan shall be binding on the developer or on any subsequent owner. In case the owner . . . shall fail to begin construction of any non-residential buildings within one year of the time specified in the schedule, *plan approval shall become null and void, and no development shall be permitted without an approved plan currently in effect.*" (Emphasis added.) 8 P. Rohan, Zoning and Land Use Controls (1999 Ed.) § 53.13 [4][f]. The commentary to that section provides in relevant part that "[a] fallback position is simply to provide that the approval lapses at some particular time, forcing a prospective developer either to seek a rezoning . . . or to seek renewed approval of the plan or for some alternative plan." Id.

We find further support for that interpretation in the regulation that authorizes the defendant to grant an extension for good cause. That grants the defendant the authority to extend the time allotted for completion of the approved plan on a showing of good cause. As a corollary, if such an extension is not granted, then the plan becomes null and void.

We are persuaded that at the expiration of the five year time period, or any extension approved by the defendant in accordance with the regulation, the plan submitted by the plaintiffs and approved in 1993 by the defendant became null and void. The district remained

in place in name only, and nothing could be done on the land absent action from the defendant. The plaintiffs, by failing to complete the development within the applicable time frame, forfeited their rights.[8] It was incumbent on the plaintiffs to petition the defendant again for permission to grant a new district, even if it was the same as the one that previously had been approved. As a result, we must consider whether the defendant properly acted within its discretion in reducing the number of condominium units from twenty-four to eighteen when it approved the new district.

## B

The plaintiffs argue that the defendant lacked the discretion to modify the second application that was

[8] Even if we were to conclude that the approval of the first application was not void, we would be left with a waiver of rights by the plaintiffs. By filing their second application, the plaintiffs waived any benefits obtained from the approval of the first application and submitted themselves to the process of obtaining either approval, approval with conditions or a denial of the second application by the defendant. See *Gagnon* v. *Planning Commission*, 222 Conn. 294, 298–99, 608 A.2d 1181 (1992).

Additionally, in their brief and again at oral argument, the plaintiffs claimed that members of the defendant commission had instructed them to submit another application. Upon further questioning, however, the plaintiffs' counsel conceded that there was nothing in the record showing that the plaintiffs *were directed* to submit the second application by a member of the defendant commission. We have searched the record extensively and have found no evidence of any possible instruction. In the defendant's trial brief, the following statement appears: "The procedure suggested by the staff of the [defendant commission] and the procedure adopted by the [plaintiffs] was to file an application to modify the initial Detailed Development Plans." That isolated statement, indicating that such a procedure was "suggested," is not the equivalent of being directed to follow a certain course of conduct.

This court is limited in its review to matters contained within the record. "In deciding a case, this court cannot resort to matters extraneous to the formal record, to facts which have not been found and which are not admitted in the pleadings, or to documents or exhibits which are not part of the record." *State* v. *Evans*, 9 Conn. App. 349, 354, 519 A.2d 73 (1986); see also *State* v. *Gilnite*, 202 Conn. 369, 378, 521 A.2d 547 (1987). Thus, the plaintiffs' claim is unavailing, and we are left with the fact that the plaintiffs submitted the second application to the defendant.

filed in 2000. We have concluded in part I A that the first application was null and void and, therefore, that the plaintiffs were required to submit the second application. It is left for us to determine whether the defendant properly acted within its discretion in modifying the plaintiffs' second application and approving only eighteen condominium units.

At the outset, we must address the scope of our review of the defendant's actions. As we have noted, the court treated the second application as a special permit or site plan and concluded that the defendant was acting in its administrative capacity. We believe that this conclusion was improper and agree with the reasoning that in acting on the application filed by the plaintiffs, the defendant was acting as a legislative body.

We are aware that a split of authority exists in the Superior Court concerning the capacity in which a planning and zoning commission acts with respect to planned development districts. Some decisions have concluded that a planning and zoning commission acts in its administrative capacity. See *Apple East, Inc.* v. *Planning & Zoning Commission*, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 63497 (August 13, 1999); *People's Bank* v. *Planning & Zoning Commission*, Superior Court, judicial district of Ansonia-Milford at Derby, Docket No. 050148 (February 7, 1996) (16 Conn. L. Rptr. 155); *Mileski* v. *Planning & Zoning Commission*, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 030284 (July 24, 1990). Other decisions have determined that in such situations, a planning and zoning commission acts in its legislative capacity. See *Campion* v. *Board of Aldermen*, Superior Court, judicial district of New Haven, Docket No. 462505 (March 21, 2003) (34 Conn. L. Rptr. 353); *Radulski* v. *Anchor Reef Club of Branford, Inc.*, Superior Court, judicial district of New Haven, Docket No. 459688 (November 1, 2002); *Espla-*

nade v. *Planning & Zoning Commission,* Superior Court, judicial district of New Haven, Docket No. 431123 (April 4, 2001); see also *Amcon Corp.* v. *Eagan,* 348 N.W.2d 66, 72 (Minn. 1984). The common thread in those decisions is that the approval of a district is a zone change, which is a legislative act by nature. See *First Hartford Realty Corp.* v. *Plan & Zoning Commission,* 165 Conn. 533, 540, 338 A.2d 490 (1973). Our Supreme Court has explained the importance of such a determination, as it implicates the scope of judicial review.

"In voting to deny the plaintiff's requested zone change of the subject property, the defendant exercised a legislative function . . . as distinguished from an administrative one. . . . Acting in such a legislative capacity, the defendant has wide and liberal discretion . . . and is free to amend its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change. . . . In contrast, when acting in an administrative capacity, a zoning commission's more limited function is to determine whether the applicant's proposed use is one which satisfies the standards set forth in the regulations and the statutes." (Citations omitted; internal quotation marks omitted.) *West Hartford Interfaith Coalition, Inc.* v. *Town Council,* 228 Conn. 498, 505–506 n.10, 636 A.2d 1342 (1994).

We are persuaded by the reasoning of the courts that have concluded that in acting on an application for the creation of a district, a planning and zoning commission acts in its legislative capacity. When the defendant approves a district, a new zone is created and a change to the zoning map is needed to accommodate the approval. Accordingly, we disagree with the court's conclusion that the defendant was acting in its administrative capacity. Instead, approval of the plans submitted by the plaintiffs is inextricably intertwined with the process of petitioning for the creation of a district,

which is, of course, a zone change. For example, attaining approval of the plans is merely one step in the overall process of obtaining a district.[9] Thus, when the defendant acted on the plans that accompanied the petition, whether those that were approved in 1993 or those that were submitted in 2000, it was acting in its legislative capacity.[10]

"We have often articulated the proper, limited scope of judicial review of a decision of a local zoning commission . . . . [T]he commission, acting in a legislative capacity, [has] broad authority to adopt the amendments. . . . In such circumstances, it is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached. . . . Acting in such legislative capacity, the local board is free to amend its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change. . . . The discretion of a legislative body, because of its constituted role as formulator of public policy, is much broader than that of an administrative board, which serves a quasi-judicial function. . . . This legislative discretion is wide and liberal, and must not be disturbed by the courts unless the party aggrieved by that decision establishes that the commission acted arbitrarily or illegally. . . . Zoning must be

[9] See footnote 3.

[10] "It is axiomatic that [w]e may affirm a proper result of the trial court for a different reason." (Internal quotation marks omitted.) *Sorban* v. *Sterling Engineering Corp.*, 79 Conn. App. 444, 456, 830 A.2d 372, cert. denied, 266 Conn. 925, 835 A.2d 473 (2003).

sufficiently flexible to meet the demands of increased population and evolutionary changes in such fields as architecture, transportation, and redevelopment. . . . The responsibility for meeting these demands rests, under our law, with the reasoned discretion of each municipality acting through its duly authorized zoning commission. Courts will not interfere with these local legislative decisions unless the action taken is clearly contrary to law or in abuse of discretion." (Citations omitted; internal quotation marks omitted.) *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* 220 Conn. 527, 542–44, 600 A.2d 757 (1991).

In the present case, the regulations provide that the defendant, in deciding whether to approve a district, shall consider, inter alia, the effects on traffic, an open space requirement, the character of the town and long-range improvements to the neighborhood.[11] During the public hearings for the second application, several residents spoke in opposition to the district and raised concerns regarding the number of people, the density and the traffic that would result if twenty-four condominium units were built. At the hearing, Joseph Migalello, the plaintiffs' consultant for the project, testified that there was no land dedicated to open space. Various residents questioned that lack of open space at the public hearing and the effect it would have on the view of the coastline. The defendant also relied on input from the fire chief as a basis for reducing the number of condominium units.[12]

The defendant was required to consider those factors to determine if the plaintiffs' proposal would have an adverse impact on the neighborhood. Furthermore, it acted within its broad authority and discretion when it

[11] See *Shelton Zoning Regs.,* §§ 34.1 and 34.8.

[12] See part II of this opinion.

determined that the reduction of the number of condominium units would ameliorate the adverse impact of the development on the surrounding neighborhood. In sum, we conclude that it was not an arbitrary abuse of discretion or an act contrary to law for the defendant to reduce the number of condominium units from twenty-four to eighteen.

II

The plaintiffs also claim that the defendant improperly relied on the report from the fire chief that was received more than three months after the close of the public hearing. Specifically, the plaintiffs rely on § 34.6 of the zoning regulations, which provides in relevant part that the defendant "may request the following information for presentation prior to or at the public hearing . . . [a] statement from the [fire chief] that the proposal meets fire safety standards and concerning the fire fighting feasibility of the proposed plan . . . ." The plaintiffs argue that the regulation prevented the defendant from using the fire chief's report, which was not submitted at the public hearing.[13] On the basis of the fire chief's report, the defendant, in conditioning its approval on the reduction of the number of units, stated in relevant part: "Drawings to date fail to resolve the concerns of the Fire Chief concerning the proximity of the face of the rock cut to the rear wall of . . . both the upper and lower level buildings, obstructing circulation for proper fire safety. . . . The geometric design of the entry drive poses difficulty for the access/egress of large

---

[13] In his report, John Milo, the Shelton fire chief, stated: "I have reviewed the site plan for the proposed [district] and offer the following comments: (1) Entrance island to be modified to accommodate fire apparatus. (2) Provide turnarounds for emergency apparatus at ends of access driveways. (3) Upper turnaround island to be modified to accommodate emergency apparatus. (4) Developer shall provide documentation to confirm driveways can support aerial apparatus while operating. (5) Building locations to be modified to provide access to rear of structures for ground laddering."

emergency vehicles. Also, the lack of a suitable turn-around at the end of the [driveway] will make it difficult if not impossible to accommodate the turning of large vehicles, including moving vans and emergency apparatus."

At the outset, we note that "[w]hen a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision. . . . The zoning board's action must be sustained if even one of the stated reasons is sufficient to support it." (Internal quotation marks omitted.) *Dodson Boatyard, LLC* v. *Planning & Zoning Commission,* 77 Conn. App. 334, 338, 823 A.2d 371, cert. denied, 265 Conn. 908, 831 A.2d 248 (2003). In the present case, the reduction of the number of condominium units was based on more than the fire chief's report; there was ample evidence of traffic and density concerns, as well as the lack of open space. Thus, even if we were to find that the use of the report was improper, we would still affirm the dismissal of the appeal. Nevertheless, we conclude that the use of the fire chief's report was proper under the facts and circumstances of this case.

We agree with the court that our decision in *Norooz* v. *Inland Wetlands Agency,* 26 Conn. App. 564, 602 A.2d 613 (1992), is dispositive of the issue before us. In *Norooz,* we stated that "[t]he proper inquiry for a reviewing court, *when confronted with an administrative agency's reliance on nonrecord information provided by its technical or professional experts, is a determination of whether the challenged material includes or is based on any fact or evidence that was not previously presented at the public hearing in the matter.*" (Emphasis added.) Id., 573–74; see also R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 47.4, pp. 444–49.

In the present case, the fire chief's report was completed on the basis of the materials presented at the public hearings. As the court stated in relevant part: "The fire chief's [report] states that his comments are based on a review of the site plans for the proposed development. . . . A review of the record indicates that the site plans were not only part of the record, but were discussed at length at the September 26, 2000 hearing." Furthermore, sufficient evidence existed in the record to support the defendant's conclusion that a reduction in the number of condominium units, thereby reducing the density, would yield sufficient space to address the fire chief's concerns. As a result, we conclude that it was proper for the court to conclude that the fire chief's report was not used in an illegal manner by the defendant and that the report supported the defendant's findings and subsequent reduction of the number of condominium units.

The judgment is affirmed.

In this opinion the other judges concurred.