**BOROUGH OF PERKASIE, Appellant**

v.

**MOULTON BUILDERS, INC.**

Commonwealth Court of Pennsylvania.

Argued Nov. 4, 2003.

Decided May 10, 2004.

Michael D. Kracht, Perkasie, for appellant.

Bernadette A. Kearney, Lansdale, for appellee.

BEFORE: PELLEGRINI, Judge, and FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

The Borough of Perkasie (Borough) appeals from the May 15, 2003, order of the Court of Common Pleas of Bucks County (trial court), which reversed the decision of the Borough Council denying the application for conditional use filed by Moulton Builders, Inc. (Moulton). We affirm.

On October 8, 2002, Moulton filed a conditional use application with the Borough, seeking approval to construct an age-restricted housing community comprised of three buildings, each containing fifty units, on Tax Parcel No. 33–01–145 (the Property). The Property consists of approximately 8.3 acres and is situated within three zoning districts, R–1, R–2, and C–2. Housing for the elderly is permitted as a conditional use under the Borough's Zoning Ordinance (Ordinance) in the R–1 and R–2 zoning districts; Moulton's proposed project would not occupy any portion of the C–2 district.

The Borough Council held a hearing on the application on December 2, 2002. Among the concerns raised by the Borough Council was whether Moulton's application satisfied the requirements of sections 186–55 and 186–128 of the Ordinance. In pertinent part, section 186–55 requires that housing for the elderly be located "within ¼ mile of basic retail services, groceries and drugs in particular." (R.R. at 292a.) Section 186–128 of the Ordinance states that the Borough Council shall grant a conditional use only if it finds evidence that the proposed use and location is "[s]uitable in terms of effects on highway traffic and safety." (R.R. at 341a.)

John H. Kennedy, owner of Kennedy Associates, a land planning and consulting firm, testified that he performed a site plan and study for Moulton. With respect to the Ordinance requirement that the housing be located within a quarter-mile of retail services, Kennedy referred to the site plan and explained that each building will have a first-floor area of 1,000 to 1,200 square feet that will have a variety of functions, including an accessory retail use.

(R.R. at 53a–54a.) Kennedy stated that there would be "something like a small store which might have some groceries or over the counter drugs that would only be available to the residents themselves." (R.R. at 54a.) Kennedy testified that there always had been a dedicated space intended to provide similar types of uses and that the plans had evolved to include the required retail uses. (R.R. at 81a–82a.) Kennedy also observed that the proposed development would be only one-third of a mile from Perkasie Square Shopping Center. (R.R. at 55a.) In addition, Moulton offered to record a declaration against the Property requiring that on-site basic retail services be provided. (R.R. at 76a–77a.)

Addressing traffic concerns, John Wichner, project manager for Traffic Planning and Design, testified that he prepared a traffic impact study for Moulton, which was admitted into the record without objection. Wichner concluded that the improvement of the site with one hundred and fifty units would cause a negligible impact upon the roads.

Wichner stated that, in reaching his conclusion, he examined existing conditions, future conditions and levels of service at principal intersections close to the site. Wichner testified that he also met with officials from the Pennsylvania Department of Transportation and included their recommendations in his traffic study. Wichner stated that he relied in part on a trip generation manual, a standard industry text that provides mathematical information for particular uses. He testified that he also visited numerous local developments to confirm the manual's data. Wichner stated that his conclusions were a conservative estimate which overestimates traffic impact.

The Borough Council denied Moulton's conditional use application, concluding that Moulton failed to show compliance with the requirements of Ordinance sections 186–55 (proximity to retail shops) and 186–128 (effects on highway traffic). The Borough Council first found that Moulton cannot physically satisfy the requirement of section 186–55 that the proposal be located within one-fourth of a mile of basic retail services. Acknowledging that Moulton proposed to establish a community room wherein retail services could be provided, the Borough Council concluded that Moulton failed to proffer any specific information to establish how these retail services would be guaranteed to the residents. In addition, the Borough Council observed that Moulton provided no testimony to demonstrate that the contemplated on-site retail services could be supported primarily by the residents, as required by section 186–55D of the Ordinance.

The Borough Council next concluded that Moulton failed to establish the proposal's compliance with 186–128 of the Ordinance. The Borough Council determined that the traffic impact study was not credible because Wichner had not considered "significant surrounding conditions" that currently increase congestion on the same roads that would be utilized by driving and pedestrian residents of the proposed development. (R.R. at 190a.)

Moulton appealed to the trial court, which reversed the Borough Council's decision and decreed that Moulton's application for a conditional use is deemed approved. The trial court first held that the Borough Council erred in denying the application for failure to satisfy the requirements of section 186–128 of the Ordinance, because no evidence was presented to establish a high degree of probability that any increase in traffic would pose a substantial threat to the health and safety of the community. The trial court next addressed the requirements of section 186–55

of the Ordinance. Noting that Moulton's proposal includes provisions for a community space in which retail services would be provided, the trial court concluded that nothing in the Ordinance required that basic retail services be provided off-site, rather than on-site. The trial court cited Moulton's testimony that a declaration would be recorded against the Property to guarantee the establishment of on-site retail services and found that no language in the Ordinance required Moulton to provide specific information as to how this retail service would be accomplished.

■■■■ On appeal to this court,[1] the Borough argues that the trial court erred in reversing Borough Council's decision because the Ordinance does not provide that provision of on-site retail services satisfies the requirement that the facility be located within one-fourth of a mile of such services and because Moulton failed to establish that its proposal was suitable in terms of its effect on traffic. We disagree.

In its entirety, section 186–55A of the Ordinance states as follows:

### § 186–55. Housing for elderly.

Where permitted as a conditional use, a housing-for-elderly project shall meet the following conditions and standards:

A. Site or lot:

(1) Area shall be no less than five acres, excluding any floodplain lands and public street rights-of-way.

(2) Adjacent to collector or primary street.

(3) Gradient of buildable area of site shall not exceed 8%.

(4) Not physically separated from social/commercial community by such barriers as unbridged streams, railroads or expanses of undeveloped industrial land.

(5) Located within¼ mile of basic retail services, groceries and drugs in particular.

(6) Located within a fifteen-minute drive of a hospital or other major medical facility.

(7) Access streets to or through the site shall conform to the general plan of streets in the neighborhood.

(R.R. at 292a.)

■■■■ Initially, we note that in interpreting the language of zoning ordinances to determine the extent of a restriction on the use of property, where doubt exists as to the intended meaning, the language shall be interpreted in favor of the property owner and against any implied extension of the restriction. *See* section 603.1 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *added by* the Act of December 21, 1988, P.L.

---

1. Where, as here, the trial court takes no additional evidence, our scope of review of a conditional use zoning appeal is limited to determining whether the Borough Council committed an error of law or a manifest abuse of discretion. *Finegan v. Board of Supervisors of Earl Township*, 826 A.2d 76 (Pa. Cmwlth.2003).

A conditional use is nothing more than a special exception that falls within the jurisdiction of the municipal legislative body rather than the zoning hearing board. *Bailey v. Upper Southampton Township*, 690 A.2d 1324 (Pa.Cmwlth.1997). The fact that a use is permitted as a conditional use reflects a legisla-

tive decision that the particular type of use is not adverse to the public interest *per se*. *Id*. An applicant for a conditional use permit bears the initial burden of proving compliance with the specific requirements of the zoning ordinance. *Appeal of Estate of Achey*, 86 Pa.Cmwlth. 385, 484 A.2d 874 (1984), *aff'd*, 509 Pa. 163, 501 A.2d 249 (1985). The standard to be applied is whether the plan as submitted complies with the specific ordinance requirements at the time of the hearing. *Appeal of Baird*, 113 Pa.Cmwlth. 637, 537 A.2d 976 (1988), *appeal denied*, 521 Pa. 613, 557 A.2d 344 (1989).

1329, 53 P.S. § 10603.1. Thus, to the extent that there is any doubt that an on-site retail establishment would satisfy the requirement of section 186–55A(5), we must interpret that provision in favor of Moulton.

Moreover, a review of section 186–55A reveals that the Ordinance sets forth requirements concerning distance and time *without regard to any means of measurement.* For example, section 186–55A(5) of the Ordinance requires that a housing for elderly project shall be located within one-fourth of a mile of basic retail services, groceries and drugs in particular. However, the Ordinance fails to specify how that one-fourth of a mile is to be measured. Is it to be measured: (1) as the "crow flies"; (2) as the distance via available roadways from the front door of the housing project to the front door of a retail establishment; or (3) as the distance via available roadways from the parking lot of the housing project to the entrance of the parking lot of a retail establishment? [2] As illustrated, the provisions of section 186–55A are ambiguous and, therefore, subject to interpretation.

What is clear from the language of section 186–55A(5) is the explicit intent that the residents of an elderly housing facility be located within a short distance of essential basic services such as grocery stores and pharmacies. In the instant case, even if the proposal did not include plans for on-site retail services, there is no dispute that the proposed facility would be located within one-third of a mile of such essential basic services. That is only a distance of an additional one-twelfth of a mile. Given the intent of the one-fourth of a mile distance requirement found in section 186–55A(5), the failure of the Ordinance to define how that one-fourth of a mile is to be measured, the fact that the difference in the actual and "required" distance is only one-twelfth of a mile and the fact that Moulton's proposed project includes provisions for on-site retail services, we conclude that the Borough Council erred and/or abused its discretion in denying Moulton's application on the grounds that it did not satisfy the provisions of section 186–55(A) of the Ordinance.

 The Borough also argues that Moulton did not carry its burden to establish that the proposal was suitable in terms of its effect on traffic. However, we conclude that Wichner's testimony establishes a *prima facie* case that the use and location will not have an adverse effect on traffic. When, as here, an applicant for a conditional use makes a *prima facie* case with respect to a provision of an ordinance, the application must be granted unless those opposing the application present sufficient evidence that the use would present a substantial threat to the community. *Bailey v. Upper Southampton Township,* 690 A.2d 1324 (Pa.Cmwlth.1997).

 An application may be denied on traffic grounds only where there is a high probability: (1) that the proposed use will generate traffic not normally generated by the type of use; and (2) that the abnormal traffic threatens safety. *Id.* Proof of adverse traffic effects usually requires a mixture of proof in the form of traffic counts, accident records and expert evidence. *Id.* Here, the record contains no opposing evidence in the form of traffic counts, accident records and expert evidence to establish that the use and location will have an adverse effect on traffic. Thus, we agree with the trial court that

**2.** In addition, the provisions of section 186–55A do not address other factors that may impact the distance and time requirements, such as the closing of nearby basic retail services.

the Borough Council erred in denying Moulton's application based on section 186–128 of the Ordinance.

Accordingly, we affirm.

### ORDER

AND NOW, this 10th day of May, 2004, the order of the Court of Common Pleas of Bucks County, dated May 15, 2003, is hereby affirmed.