WILLIAM E. CUNNINGHAM ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF PLAINVILLE ET AL.
(AC 25739)

Dranginis, Flynn and Hennessy, Js.

---

274

Argued April 21—officially released July 19, 2005

*William T. Barrante,* for the appellants (named plaintiff et al.).

*Richard M. Seguljic,* for the appellee (named defendant).

*Robert A. Ziegler,* with whom, on the brief, was *Jeffrey M. Knickerbocker,* for the appellees (defendant Durkin Construction, LLC, et al.).

*Opinion*

FLYNN, J. The plaintiffs, abutting landowners,[1] appeal from the judgment of the trial court dismissing their appeal from the decision of the defendant planning and zoning commission of the town of Plainville (commission) approving a site plan application filed by the defendant Durkin Construction, LLC, with respect to property owned by the defendant Durkin Village Plainville, LLC (collectively, Durkin). As initial matters, the defendants, without filing a cross appeal, raise issues concerning the plaintiffs' alleged failure to establish aggrievement before the trial court, their alleged abandonment of claims before the trial court and their alleged improper references to the Plainville plan of

---

[1] The plaintiffs at trial were William Cunningham, Beverly Cunningham, Jennifer Bartiss-Earley, Pierre Morin, Evelyn Morin, John Moretti, Sheila Moretti, Horace Matthews and Jeannette Matthews. The plaintiffs note in their brief, however, that Pierre Morin, Evelyn Morin, John Moretti, Sheila Moretti, Horace Matthews and Jeannette Matthews have withdrawn from the appeal.

conservation and development.[2] On appeal, the plaintiffs claim that the court improperly (1) interpreted the term "open space" set forth in the Plainville zoning regulations and (2) concluded that the commission had acted within its discretion in requiring Durkin to include a paved walkway when the regulations required a natural vegetation buffer. We affirm the judgment of the trial court.

The record reveals the following facts. Durkin submitted a site plan to the commission in June, 2003. The plan called for the construction of seven stand-alone condominium units in an R-11 zone. Each unit had a lot size of at least 11,000 square feet, with the total square footage of the property measuring 82,299 square feet. On September 9, 2003, the commission conducted a public hearing on the site plan, at which many of the plaintiffs testified. On September 16, 2003, the commission published its decision approving the site plan in the Herald. On September 20, 2003, the plaintiffs timely filed an appeal from the commission's decision approving the site plan, which the court, *R. Robinson, J.*, upheld in an April 6, 2004 written decision. The plaintiffs filed a motion to reargue, which was granted by the court, but the relief they requested was denied. This appeal followed. Initially, we will address the matters raised by the defendants and then proceed to consider the merits of the plaintiffs' appeal.

I

A

Although the defendants did not file a cross appeal, they raise an issue concerning the plaintiffs' alleged

---

[2] On appeal, the defendants filed a motion to strike the plaintiffs' references to the Plainville plan of conservation and development on the ground that it was not part of the trial court record. On February 16, 2005, we denied the defendants' motion to strike without prejudice to raising this request at oral argument. During oral argument, the defendants renewed their motion.

failure to prove aggrievement before the trial court, arguing that matters concerning subject matter jurisdiction must be addressed before this appeal can be considered. Although generally correct in their assertion, the defendants do not challenge our subject matter jurisdiction to hear this appeal; rather, they challenge the trial court's jurisdiction because they claim that the plaintiffs failed to prove aggrievement to the trial court. This issue distinctly was raised before the trial court, and, in the court's memorandum of decision, it specifically found that the record established that all of the plaintiffs were aggrieved by virtue of their status as abutting property owners. The defendants did not file a cross appeal from that aspect of the trial court's judgment and, therefore, because the issue does not directly challenge our jurisdiction, it is not before us in the present appeal. See *B. I. B. Associates* v. *Zoning Board of Appeals*, 163 Conn. 615, 617, 316 A.2d 414 (1972) (declining to consider defendant nonappellant's assertion that plaintiff failed to establish aggrievement before trial court).

B

The defendants next assert that the plaintiffs waived all of their issues on appeal by failing to brief those issues adequately before the trial court. The defendants raise no claim of inadequate briefing as to the plaintiffs' appellate brief; they contend only that the trial court brief contained no legal authority and was, therefore, inadequate. As with the defendants' prior claim, this issue distinctly was raised before the trial court. The defendants, having not filed a cross appeal in this matter, may not raise this issue for review on appeal. See Practice Book § 61-8; *Farmers & Mechanics Savings Bank* v. *First Federal Savings & Loan Assn. of Meriden*, 167 Conn. 294, 303 n.4, 355 A.2d 260 (1974); *Rizzo* v. *Price*, 162 Conn. 504, 512, 294 A.2d 541 (1972); see also *B. I. B. Associates* v. *Zoning Board of Appeals*, supra,

163 Conn. 617; *Akin* v. *Norwalk*, 163 Conn. 68, 70, 301 A.2d 258 (1972).

### C

The final issue raised by the defendants concerns their motion to this court to strike from the plaintiffs' brief and appendix any reference to the Plainville plan of conservation and development (conservation plan) on the ground that it was not part of the trial record. We grant the defendants' motion to strike.

After the trial court had dismissed the plaintiffs' appeal, they filed a motion to reargue, attaching several pages of the conservation plan, which was not part of the trial record, to their motion. The court granted the plaintiffs' motion to reargue, denied their oral motion to supplement the record with the conservation plan and denied the relief requested in the motion to reargue, thereby reaffirming its decision dismissing the appeal. The court, however, did mark for identification the excerpts attached to the plaintiffs' motion to reargue.

The defendants argue that, pursuant to Practice Book § 60-2 (3),[3] we may not take into account these portions of the conservation plan in considering the merits of the plaintiffs' appeal because they were not part of the trial record and the court denied the motion to supplement the record. Although the trial court marked the excerpts as an exhibit for identification at the hearing on the motion to reargue, there is no dispute that the conservation plan was not before the court when it rendered its judgment dismissing the plaintiffs' appeal. Further, there is no indication that the court relied on the excerpts when denying the plaintiffs the relief requested in their motion to reargue. In addition, the plaintiffs make no claim that the court improperly

---

[3] Practice Book § 60-2 provides in relevant part that we may "upon motion of any party . . . (3) order improper matter stricken from the record or from a brief or appendix . . . ."

denied their oral motion to supplement the record after trial. Because the conservation plan was not in evidence before the trial court when it rendered its judgment dismissing the appeal, and we do not take new evidence at this level of appeal; see *State* v. *Dillard*, 66 Conn. App. 238, 248 n.11, 784 A.2d 387, cert. denied, 258 Conn. 943, 786 A.2d 431 (2001); we grant the defendants' motion to strike.

## II

On appeal, the plaintiffs claim that the trial court improperly interpreted the term "open space" set forth in § 540 (4) of the Plainville zoning regulations. The plaintiffs argue that this section mandates that the land designated for use as open space be "suitable" for that purpose and that it be set aside and not part of the building lots. The defendants argue that the site plan provides sufficient open space, as that term is used in § 540 (4) of the regulations. We agree with the defendants.

"Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight . . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when [an] agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law. . . . These principles apply equally to regulations as well as to statutes. . . . [However, a]

court that is faced with two equally plausible interpretations of regulatory language . . . properly may give deference to the construction of that language adopted by the agency charged with enforcement of the regulation. . . . [Z]oning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes. . . . Thus, in construing regulations, our function is to determine the expressed legislative intent. . . . Moreover, regulations must be interpreted in accordance with the principle that a reasonable and rational result was intended . . . and the words employed therein are to be given their commonly approved meaning." (Citations omitted; internal quotation marks omitted.) *Wood* v. *Zoning Board of Appeals*, 258 Conn. 691, 698–99, 784 A.2d 354 (2001). Because the interpretation of Plainville zoning regulations presents a question of law, our review of the plaintiffs' claim is plenary.

The specific phrase that we are called on to interpret in this appeal is "open space" as that phrase is used in § 540 (4) of the zoning regulations. Section 540 (4) provides: "Each development shall be required to provide a minimum of open space equaling 20% of the total land area exclusive of driveways, parking and loading areas. The site plan shall designate land suitable for use as open space." Plainville Zoning Regs., art. 5, § 540 (4). A review of the regulations as a whole, however, reveals no definition of the phrase "open space."

Despite the lack of a definition of "open space," that phrase, or one very similar thereto, is used elsewhere in the regulations, including the definition of rear yard as "an *open space* on the same lot with a main building, unoccupied, except as herein permitted, extending the full length of the lot and situated between the rear line of the lot and the rear line of the building, projected to the side lines of the lot"; (emphasis added) Plainville

Zoning Regs., art. 2, Definitions (54); the definition of front yard as "an *open, unoccupied space* extending the full width of the lot and situated between the street line and in the case of corner lots, the front yard shall be considered to extend along all streets"; (emphasis added) id., art. 2, Definitions (53); and the definition of side yard as "an *open and unoccupied space* on a lot as established in 'Section 400—Schedule of Height, Area and Yard Requirements' and extending from the rear line of the front yard to the front line of the rear yard." (Emphasis added.) Id., art. 2, Definitions (55). Additionally, the purpose statement of the regulations provides: "For the purpose of promoting the health, safety, morals and general welfare of the community; lessening congestion in the streets; providing adequate light and air; preventing the overcrowding of land and avoiding undue concentration of population; facilitating adequate provision of transportation, water, sewerage, schools, parks and other public requirements; conserving the value of buildings and encouraging the most appropriate use of the land throughout the Town; providing for the public health, comfort and general welfare in living and working conditions; regulating and restricting the location of trades, industries and the location of buildings designed for specific uses; *regulating and limiting the height, area of yards, courts and other open spaces* for buildings hereafter erected, the Plainville Town Planning and Zoning Commission has adopted the following regulations." (Emphasis added.) Id., art. 1, § 100.

The plaintiffs also refer to the town's single-family residential regulations, specifically § 506, which concern subdivisions in R-40 and R-20 zones, as specifically requiring that "the number of dwelling units contemplated by the minimum lot requirements [be] maintained on an overall basis and desirable open space, tree cover, scenic vista and other natural features [be]

preserved . . . ." Plainville Zoning Regs., art. 5, § 506. The plaintiffs argue that under § 506, if a subdivider wants to reduce the lot size requirements, it must set aside land as "open space" to be deeded to the town.[4] They argue that this demonstrates that open space is more than just undeveloped portions of the lot. The defendants counter that the subdivision regulations do not apply to the case at hand. Although we agree with the defendants that this regulation, which governs subdivisions, is inapplicable to the development for which the defendants' site plan was approved, we do take notice that § 506 requires a set aside only where the subdivider seeks to lessen the lot size requirements; otherwise, the developer need not provide a set aside but need only preserve the "desirable open space, tree cover, scenic vista and other natural features"; id.; normally required by the regulations. This requirement, however, does not provide a definition of open space as the plaintiffs insinuate; rather, it lists open space as one item in a list of things to be preserved that includes scenic vistas, tree cover and other natural features. It does not mean, as the plaintiffs suggest, that open space is one designated area containing only scenic vistas, tree cover and other natural features.

Reviewing the plain language of the zoning regulations, we conclude that the 20 percent open space requirement found in § 540 (4) does not require a set aside of one individual portion of the site, but rather requires that 20 percent of the site be undeveloped.[5]

[4] The defendants, here, have not sought to lessen the lot size requirements in their site plan.

[5] In rendering its decision, the court deferred to the commission's interpretation of the phrase "open space" and relied on a letter to the commission from Len Tundermann, the town planner, addressing an allegation that the defendants' development contained an insufficient amount of "open space." The letter provides in relevant part: "[The] statement that the Durkin site lacks sufficient area to meet the requirements of the R11 Zone is erroneous because it misconstrues the regulations. For multifamily housing the zoning regulations require that a site have area sufficient to satisfy the minimum lot area requirement for the zone for the number of units to be placed on

The regulations clearly distinguish between a requirement for open space and a requirement for a set aside. Compare Plainville Zoning Regs., art. 5, § 540 (4), and art. 2, Definitions (54), (53) and (55), with art. 5, § 506.

## III

The plaintiffs next claim that the court improperly concluded that the commission acted within its discretion in requiring Durkin to include a paved walkway when the regulations required a natural vegetation buffer. The defendants argue that the commission acted properly in requiring the concrete walkway within the buffer. We agree with the defendants.

"A local board or commission is in the most advantageous position to interpret its own regulations and apply them to the situations before it. . . . Although the position of the municipal land use agency is entitled to some deference . . . the interpretation of provisions in the ordinance is nevertheless a question of law for the court. . . . The court is not bound by the legal interpretation of the ordinance by the [board]. . . . If a board's time-tested interpretation of a regulation is reasonable, however, that interpretation should be accorded great weight by the courts. . . . [Where] the principal issue

---

it. It establishes the permitted density for the development, and that is all. For the Durkin site, the seven units proposed for construction call for a site area not less than 77,000 sq. ft., and the site comprises 82,299 sq. ft., so the requirement is satisfied. A separate requirement is that each multifamily housing development provide a minimum of 20% of total land area as open space. The flaw in [the argument that there is insufficient space] is [the] belief that both area requirements are taken out of the same 'pie.' A rough calculation of impervious surfaces planned for the Durkin site for roof tops, driveways and off-street parking, streets and sidewalks totals about 23,438 sq. ft., which leaves about 58,861 sq. ft. as undeveloped area. The 20% open space requirement constitutes 16,460 sq. ft., which is more than satisfied under the plan."

In conducting our plenary review, we offer no deference to the commission's interpretation because we conclude that the plain language of the regulations is dispositive of the issue.

on appeal is the interpretation of certain provisions of the . . . zoning regulations, [b]ecause the trial court in interpreting the regulations has made conclusions of law, our review is plenary." (Internal quotation marks omitted.) *Vivian* v. *Zoning Board of Appeals*, 77 Conn. App. 340, 344, 823 A.2d 374 (2003).

Section 540 (3) provides: "Lots shall be buffered from neighboring properties by natural vegetation, as recommended by the [commission]." Plainville Zoning Regs., art. 5, § 540 (3). Section 602, entitled "site plan submission requirements," provides in relevant part: "A 25' buffer area with screening is required if a property, use or building abuts a residence and/or residential zone. Screening shall include a fence and trees . . . . Screening also may include a berm with trees . . . . The Commission may modify the buffer and screening requirements if in its judgment the physical features and characteristics of the site, including but not limited to inland wetlands, watercourses, rock outcropping and/or excessive slopes, make it impractical to require such screening and buffers." Id., art. 6, § 602 (2) (u).

There is no dispute that the Durkin property abuts a residential zone. The particular portion of the property to which the plaintiffs take issue is that area abutting the southerly portion of 74 South Washington Street. The dispute concerns the commission's discretion or lack thereof to allow for sidewalks in the buffer area abutting that property. The court found that the commission, and not Durkin, required the placement of the sidewalks within the buffer area and that nothing in the regulations prohibited the presence of sidewalks within the buffer area.[6] After thoroughly reviewing the

[6] The court specifically referred to a memorandum sent by town planner Len Tundermann to the commission that provided in relevant part: "The requisite landscaped buffer along the southern property line of #74 South Washington Street now includes the sidewalk; there is nothing in the zoning regulations that precludes a sidewalk within a buffer, but the Commission should take note of it."

regulations and the site plan, we agree with the trial court.

"A zoning regulation is legislative in nature, and its interpretation involves principles of statutory interpretation . . . ." (Internal quotation marks omitted.) *Blakeman* v. *Planning & Zoning Commission*, 82 Conn. App. 632, 639, 846 A.2d 950, cert. denied, 270 Conn. 905, 853 A.2d 521 (2004). "A court must interpret a statute as written . . . and it is to be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation." (Internal quotation marks omitted.) *Vivian* v. *Zoning Board of Appeals*, supra, 77 Conn. App. 345. A fair reading of the plain language of §§ 540 (3) and 602 (2) (u) together reveals that the commission has the discretion to recommend what types of natural vegetation are placed within the buffer area; see Plainville Zoning Regs., art. 5, § 540 (3); and, if it determines that it is impractical to require screening and a twenty-five foot buffering area, it may modify the requirements. See id., art. 6, § 602 (2) (u). The plaintiffs argue, however, that "[t]here is no way it was impractical to have a [twenty-five] foot buffer near [74 South Washington Street] of only 'natural vegetation'." Our reading of §§ 540 (3) and 602 (2) (u), however, differs from that of the plaintiffs in that we do not view those sections as requiring a twenty-five foot buffer that is completely filled with trees and natural vegetation extending across the entire property line. The plain language of these sections requires only that there be a fence and trees within the buffer area and that this may be modified if the commission finds these requirements impractical.

Reviewing that site plan, it is readily ascertainable that that portion of the defendants' development that abuts the southerly portion of 74 South Washington Street has a twenty-five foot buffer. In this buffer there is a fence and many trees, both pines and either oaks

or maples. In the area of the buffer that is farthest from the southerly portion of 74 South Washington Street, there is a four foot concrete walkway. A plain reading of the relevant regulation leads us to the conclusion that a concrete walkway is not prohibited within the buffer area. Rather, we conclude, absent the exercise of the commission's discretion, that as long as there is a twenty-five foot buffer with a fence and trees, the addition of a concrete walkway within that buffer is not prohibited.

The judgment is affirmed.

In this opinion the other judges concurred.