TRUMBULL FALLS, LLC, ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF TRUMBULL (AC 26715)

Schaller, Rogers and Foti, Js.

Argued May 1—officially released August 8, 2006

*Kevin J. Gumpper*, for the appellant (defendant).

*Thomas J. Welch*, with whom, on the brief, was *John H. Welch, Jr.*, for the appellees (plaintiffs).

*Opinion*

SCHALLER, J. The defendant, the planning and zoning commission of the town of Trumbull, appeals from the judgment of the trial court sustaining the appeal of the plaintiffs, Trumbull Falls, LLC, Old Mine Associates, LLC, and Richard Aiello, trustee, permitting the construction of a planned residential development.[1] On appeal, the defendant claims that the court improperly interpreted the town's zoning regulations. We reverse the judgment of the trial court.

---

[1] Article IX, § 3, of the Trumbull zoning regulations provides: "A Planned Residential Development shall be deemed to mean a residential development under one sponsorship containing one or more buildings, each containing one or more dwelling units, and not to exceed seven (7) units per building which shall be individually owned under a cooperative or a condominium arrangement."

The following facts, as found by the court, and procedural history are relevant to our discussion. On February 10, 2004, Trumbull Falls, LLC,[2] filed an application for a special permit to construct a planned residential development (development) on 18.648 acres of land located at 80-100 Monroe Turnpike in Trumbull.[3] This proposed development consisted of 112 units.

The defendant held a public hearing on the application on March 17 and April 27, 2004. On May 19, 2004, the defendant, by a three to two vote, denied the application. The sole basis for the denial was the determination that the proposed development violated article IX, § 4, of the zoning regulations, which requires a distance of one mile between such developments.[4] Specifically, the defendant determined that the proposed development was located approximately seven-tenths of one mile from another development when measured *as the crow flies*, that is, on a straight line on a map.

The plaintiffs appealed to the Superior Court on June 14, 2004. During a hearing before the court on December 23, 2004, the parties stipulated that if the application did not satisfy article IX, § 4, a variance from the zoning board of appeals would be necessary. They also agreed that if the straight line method was utilized, the distance

[2] Old Mine Associates, LLC, and Aiello were listed on the applications as owners of the property.

[3] Article IX, § 2, of the Trumbull zoning regulations provides in relevant part: "Planned Residential Developments shall be permitted by special permit granted by the Planning and Zoning Commission in accordance with the general provisions of these regulations and shall comply with such additional standards as are set forth herein. . . ."

[4] Article IX, § 4, of the Trumbull zoning regulations provides in relevant part: "Planned Residential Developments shall be permitted in any business commercial district or any residentially zoned premises adjacent to a business commercial district. . . . Each said district shall contain no less than six acres or more than 26 acres. The Planning and Zoning Commission shall not allow more than one Planned Residential Development to be located closer than one mile from any other Planned Residential Development. These regulations shall prohibit any use allowed by the underlying zoning."

was less than one mile. In a memorandum of decision dated March 24, 2005, the court sustained the plaintiffs' appeal and concluded that the defendant acted in an arbitrary manner when it denied the application. Specifically, the court determined that, in the past, the normal practice was for the town engineer to measure distance along the road rather than by the straight line method. The parties had agreed that measured by the roadway method, the distance between the proposed development and the nearest development exceeded the one mile requirement.[5] According to the court, "the [defendant] departed from a settled measurement procedure and did not consider the maintenance of the neighborhood nor the effect on adjacent neighborhoods."

The court noted that it did not consider the plaintiffs' equal protection claim as a result of its conclusion that the plaintiffs' property rights were affected by an arbitrary decision. The court further determined that the defendant properly eliminated two units from the proposal in favor of open space.[6] This appeal followed. Additional facts will be set forth as necessary.

At the outset of our discussion, it will be helpful to set forth the relevant legal principles regarding special permits. "General Statutes § 8-2 (a) provides in relevant part that local zoning regulations may provide that certain . . . uses of land are permitted only after obtaining a special permit or special exception . . . subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. . . . The terms special permit and special exception are interchangeable. . . . A special permit allows a property

---

[5] According to Brian Smith, the town engineer, the distance between the two developments was 5380 linear feet, or 1.02 miles.

[6] This determination has not been challenged on appeal and therefore is not before us.

owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience and property values. . . . An application for a special permit seeks permission to vary the use of a particular piece of property from that for which it is zoned, without offending the uses permitted as of right in the particular zoning district. . . . When ruling upon an application for a special permit, a planning and zoning board acts in an administrative capacity. . . . [Its] function . . . [is] to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply." (Citation omitted; internal quotation marks omitted.) *Gevers* v. *Planning & Zoning Commission*, 94 Conn. App. 478, 481–82, 892 A.2d 979 (2006); see also *Housatonic Terminal Corp.* v. *Planning & Zoning Board*, 168 Conn. 304, 307, 362 A.2d 1375 (1975); see generally R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 5.1, pp. 135–37; T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) pp. 175–79.

We now identify the applicable standard of review. This case requires us to interpret article IX, § 4, of the zoning regulations. "Because the interpretation of the regulations presents a question of law, our review is plenary. . . . Additionally, zoning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes. . . . Moreover, regulations must be interpreted in accordance with the principle that a reasonable and rational result was intended . . . . The process of statutory interpretation involves

the determination of the meaning of the statutory language [or . . . the relevant zoning regulation] as applied to the facts of the case, including the question of whether the language does so apply." (Citations omitted; internal quotation marks omitted.) *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 652, 894 A.2d 285 (2006); see also *Blakeman* v. *Planning & Zoning Commission*, 82 Conn. App. 632, 638–39, 846 A.2d 950, cert. denied, 270 Conn. 905, 853 A.2d 521 (2004); *Doyen* v. *Zoning Board of Appeals*, 67 Conn. App. 597, 604–605, 789 A.2d 478, cert. denied, 260 Conn. 901, 793 A.2d 1088 (2002).[7]

We have stated that "[o]rdinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight . . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . *Furthermore, when [an] agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law*." (Emphasis added; internal quotation marks omitted.) *Cunningham* v.

---

[7] The plaintiffs contend that the appropriate standard of review is whether the trial court concluded properly that the decision by the board to deny the special permit application was arbitrary, illegal or an abuse of discretion. See *Smith Bros. Woodland Management, LLC* v. *Planning & Zoning Commission*, 88 Conn. App. 79, 85, 868 A.2d 749 (2005). In our view, that standard of review applies to whether a local board properly acted on a special permit application. In the present case, the issue is the interpretation of article IX, § 4, of the zoning regulations and, thus, the plenary standard of review applies.

*Planning & Zoning Commission*, 90 Conn. App. 273, 279, 876 A.2d 1257, cert. denied, 276 Conn. 915, 888 A.2d 83 (2005); see also *Raymond* v. *Zoning Board of Appeals*, 76 Conn. App. 222, 233, 820 A.2d 275, cert. denied, 264 Conn. 906, 826 A.2d 177 (2003).

Finally, we note that a "court that is faced with two equally plausible interpretations of regulatory language . . . properly may give deference to the construction of that language adopted by the agency charged with enforcement of the regulation. . . . Thus, in construing regulations, our function is to determine the expressed legislative intent. . . . Moreover . . . the words employed therein are to be given their commonly approved meaning." (Internal quotation marks omitted.) *Cunningham* v. *Planning & Zoning Commission*, supra, 90 Conn. App. 280.

The plain language of article IX, § 4, provides that the defendant "shall not allow more than one Planned Residential Development to be located closer than one mile from any other Planned Residential Development. . . ." The regulation is silent as to how the distance between developments is to be measured. At the May 19, 2004 hearing, much of the discussion focused on the method of calculating the distance between the proposed development and the nearest existing development. With respect to the three other developments in Trumbull, it was undisputed that they all exceeded the one mile requirement regardless of the method used to calculate distance.[8] Two of the members of the defendant, however, argued that, in the past, the distance

---

[8] At the May 19, 2004 hearing, commissioner Timothy M. Herbst stated that the town engineer had measured the prior developments and that all three satisfied the distance requirement, irrespective of the manner of calculation. No one at the hearing disputed this statement. The town engineer then stated that he originally had measured the distance for the present application by using the roadway method. Using this method, the distance between the proposed development and the closest existing development exceeded one mile. The members of the defendant then requested that the town engineer perform the calculation using the straight line method, which resulted in a distance of less than one mile.

had been calculated by the roadway method. The town engineer indicated that he had measured the distance by using the roadway method.

The crucial determination in this case is the method to be used in measuring distance. Is it to be measured: (1) using the straight line method of measuring from property line to property line; (2) as the distance via available roadways to and from the entrances to the developments; or (3) as the distance via available road-ways from the doorway of a particular building in each development? See *Borough of Perkasie* v. *Moulton Builders, Inc.*, 850 A.2d 778, 782 (Pa. Commw. 2004).

"When more than one construction [of a regulation] is possible, *we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results*." (Emphasis added; internal quotation marks omitted.) *Graff* v. *Zoning Board of Appeals*, supra, 277 Conn. 653. Our Supreme Court has instructed that courts should avoid interpre-tations that could result in "absurd [and] unworkable . . . results." (Internal quotation marks omitted.) *State* v. *Solek*, 242 Conn. 409, 421, 699 A.2d 931 (1997). In our view, the straight line method of measuring distance renders article IX, § 4, effective and workable, and avoids the unreasonable and bizarre results that occur from the use of the roadway method. Using the roadway method could involve inconsistencies in its application that could result in impermissibly arbitrary enforce-ment. For example, is distance measured "building to building" or property line to property line? Is it mea-sured using the center of the roadway, or the right or left boundary of the roadway? Additionally, a bizarre result could occur if a distance measured using the center of the roadway is less than one mile, but mea-sured on the outside of the roadway, due to a curve, is greater than one mile. As the United States District Court for the Eastern District of Pennsylvania has

noted, adopting a method of measurement other than the straight line method would create uncertainty, generate needless debate and thwart a readily ascertainable distance. *United States* v. *Blount*, 940 F. Sup. 720, 723 (E.D. Pa.), aff'd sub nom. *United States* v. *Riddick*, 100 F.3d 949 (3d Cir. 1996), cert. denied, 519 U.S. 1083, 117 S. Ct. 751, 136 L. Ed. 2d 688 (1997). In order to avoid such problematic results, we conclude that the distance requirement set forth in article IX, § 4, of the zoning regulations should be calculated by the straight line method.

Support for our interpretation may be found in many cases involving criminal statutes. For example, in *People* v. *Robbins*, 5 N.Y.3d 556, 840 N.E.2d 1020, 807 N.Y.S.2d 7 (2005), the defendant was charged with violating a state statute prohibiting the sale of drugs within 1000 feet of a school. On appeal, the defendant argued that "the statute mandates that the requisite distance be calculated by 'the pedestrian [or roadway] method' . . . ." Id., 558. The New York Court of Appeals reasoned that the intent of the legislature in enacting this particular statute was "to create a drug-free buffer zone of protection [circumscribed within] a fixed geographical area, without regard to whether the area might contain obstacles around which people might have to detour." (Citation omitted.) Id., 558–59. The court also noted that the United States Courts of Appeal for the First, Second, Ninth, Eleventh and District of Columbia Circuits have "universally interpreted [the federal schoolyard law prohibiting distribution, possession with intention of distributing or manufacturing of a controlled substance in or on or within 1000 feet of a school] to contemplate the straight-line method of measurement." Id., 559.[9] The court concluded that the

---

[9] See also *Goodson* v. *United States*, 760 A.2d 551, 553–54 (D.C. App. 2000) (noting that federal courts have used straight line method); *Howard* v. *State*, 591 So. 2d 1067, 1068 (Fla. App. 1991) (Florida statute "effects more severe punishment of drug transactions which occur within 1,000 feet of certain schools as the crow flies, not as the car drives. We construe the legislative

"[d]efendant's contrary reading would introduce uncertainty and open the statute to a charge of vagueness. . . . At a minimum, requiring speculation about pedestrian routes would create uncertainty in a statute which was meant to establish clear lines of demarcation . . . ." (Citation omitted; internal quotation marks omitted.) Id.

Courts have reached similar conclusions in civil cases as well. For example, in *Restaurant Row Associates* v. *Horry County*, 335 S.C. 209, 516 S.E.2d 442, cert. denied, 528 U.S. 1020, 120 S. Ct. 528, 145 L. Ed. 2d 409 (1999), the plaintiffs were engaged in the adult entertainment business. The county adopted an ordinance establishing adult entertainment zoning regulations. Id., 212. These regulations prohibited the location of an adult entertainment establishment within 500 feet of a residential district. Id., 213. The South Carolina Supreme Court stated: "This Court requires [that] distance measurements of this nature be done as the crow flies and not based on the actual terrain that must be crossed. . . . Courts addressing the issue have uniformly held [that] proximity is measured in a straight line, or as the crow flies." (Citation omitted; internal quotation marks omitted.) Id., 221. Similarly, in *Taylor Drug Stores, Inc.* v. *Indiana*

---

intent to measure within a 1,000-foot radius, not by local idiosyncrasies of pedestrian or automobile travel."); *State* v. *Prosper*, 260 Kan. 743, 745–46, 926 P.2d 231 (1996) (Kansas Supreme Court adopted rule from federal courts that distance between illegal drug activity and school property should be calculated by straight line method); *Commonwealth* v. *Brown*, 839 A.2d 433, 436 n.1 (Pa. Super. 2003) (Pennsylvania drug free school zone sentencing statutes penalize drug sales within 1000 feet measured as crow flies); *Brown* v. *State*, 333 S.C. 238, 241, 510 S.E.2d 212 (1998) (South Carolina Supreme Court "agree[d] with [other state] courts that the only way to uniformly measure the distance between a school, church or other protected location and the location where illegal drugs were sold is to do so in a straight line"); *State* v. *Vigh*, 871 P.2d 1030, 1035 (Utah App. 1994) (Utah Court of Appeals "conclude[d] that 1000 feet should be measured in a straight line radius extending outward from the . . . property [and] measured 'as the crow flies' ").

*Alcoholic Beverage Commission*, 497 N.E.2d 932, 933 (Ind. App. 1986), the issue before the Indiana Court of Appeals was whether the plaintiff's business was located within 200 feet of a church. The court, in determining the proper method to measure distance, stated: "A statute may specify the precise terminal points to be used in a measurement, *but in the absence of an express provision, the general rule is that measurement should be along the shortest straight line* connecting [the protected structure] and the proposed premises, regardless of intervening obstacles." (Emphasis added.) Id., 936.

In further support of our interpretation of article IX, § 4, of the zoning regulations, we note that when a legislative body intends to direct that a certain type of distance measurement be used, a statute or regulation may be drafted with such specificity. For example, § 19-13-B51m (b) (1) of the Regulations of Connecticut State Agencies, which governs well permits, requires a 200 foot distance requirement to be measured along a "street, alley or easement, of the approved water supply . . . ."[10] Similarly, 29 C.F.R. § 825.111 (3) (b), pertaining to the eligibility of an employee under the federal Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq., provides: "The 75-mile distance is measured by surface miles, using surface transportation over public streets,

---

[10] Section 19-13-B51m (b) of the Regulations of Connecticut State Agencies provides in relevant part: "No water supply well permit shall be given by the director of health: (1) To premises used for human occupancy when a community water supply system having at least fifteen service connections or regularly serving at least twenty-five individuals is deemed available if the boundary of the parcel of property in which the premises is on or will be located on is within two hundred feet, measured along a street, alley or easement, of the approved water supply . . . ."

Although we have not found any Connecticut appellate authority, we note that one trial court has interpreted § 19-13-B51m as using the roadway method of determining distance. See *American Dimensions* v. *Crespan*, Superior Court, judicial district of Litchfield, Docket No. CV04-4000824S (December 14, 2004) (38 Conn. L. Rptr. 382).

roads, highways and waterways, by the shortest route from the facility where the eligible employee needing leave is employed. Absent available surface transportation between worksites, the distance is measured by using the most frequently utilized mode of transportation (e.g., airline miles)." See, e.g., *Bellum* v. *PCE Constructors, Inc.*, 407 F.3d 734, 738–40 (5th Cir. 2005), cert. denied, 546 U.S. 1139, 126 S. Ct. 1150, 163 L. Ed. 2d 1002 (2006).

We note that cases from other jurisdictions have reached similar conclusions. For example, in *Mariscos Las Islitas, Inc.* v. *Gonzales*, 122 P.3d 1082, 1083 (Colo. App. 2005), the owners of a restaurant filed an application for a liquor permit that was denied because the location of the business was within 500 feet of a public school. The Colorado statute in question provides in relevant part that "[t]he distances . . . are to be computed by direct measurement from the nearest property line of the land used for school purposes to the nearest portion of the building in which liquor is to be sold, *using a route of direct pedestrian access*." (Emphasis added.) Id. In a similar type of case, the Kentucky Supreme Court was required to determine the proper method of determining distance. The statute in that case provided: "The measurement *shall be taken on the street* on which the licensed premises are located, in a straight line from the nearest outside wall of the building on the licensed premises to the nearest outside wall of the church or school building." (Emphasis in original; internal quotation marks omitted.) *Hunt Club, Inc.* v. *Moberly*, 407 S.W.2d 148, 149 (Ky. 1966). The court concluded that by including the phrase "taken on the street," the legislature intended that the distance be calculated using the pedestrian or roadway method, rather than the straight line or as the crow flies method. Id.; see also *State Beverage Dept.* v. *Brentwood Assembly of God Church*, 149 So. 2d 871, 873 (Fla. App.)

(as crow flies method improper when statute states distance should be measured "by following the shortest route of ordinary pedestrian travel along the public thoroughfare from the main entrance of said place of business to the main entrance of the church" [internal quotation marks omitted]), cert. denied, 155 So. 2d 614 (Fla. 1963). Simply put, if a legislative body[11] intends that distance should be calculated in a manner different from the straight line method, it knows how to do so.

The plaintiffs argue that all previous measurements relative to article IX, § 4, were done using the roadway method. We agree with the plaintiffs that "[a] local board or commission is in the most advantageous position to interpret its own regulations and apply them to the situations before it. . . . Although the position of the municipal land use agency is entitled to some deference . . . the interpretation of provisions in the ordinance is nevertheless a question of law for the court. . . . The court is not bound by the legal interpretation of the ordinance by the [board]. . . . If a board's time-tested interpretation of a regulation is reasonable, however, that interpretation should be accorded great weight by the courts." (Internal quotation marks omitted.) *Cunningham* v. *Planning & Zoning Commission,* supra, 90 Conn. App. 283. We disagree, however, that article IX, § 4, has been subject to time tested interpretations by the defendant. The members of the defendant noted that, in the past, the relevant distance calculation had been done by the town engineer using the roadway method. In those instances, however, the developments exceeded the one mile requirement using either the roadway or the straight line methods. The record reveals that the present case was the first time that

---

[11] If a local zoning commission amends its zoning regulation, that commission would be acting in a legislative, rather than an administrative capacity. See *Harris* v. *Zoning Commission,* 259 Conn. 402, 415–16, 788 A.2d 1239 (2002).

a proposed development failed to meet the minimum distance requirement by one method and met the requirement by another. In short, this application was distinguishable from prior applications. We disagree, therefore, that the defendant's interpretation in the present case was contrary to and ignored well established precedent. Precedent interpreting article IX, § 4, of the zoning regulations does not exist.

Citing *Balf Co.* v. *Planning & Zoning Commission*, 79 Conn. App. 626, 636, 830 A.2d 836, cert. denied, 266 Conn. 927, 835 A.2d 474 (2003), the plaintiffs further argue that "[w]here more than one interpretation of language [of a zoning regulation] is permissible, restrictions upon the use of lands are not to be extended by implication . . . [and] doubtful language will be construed against rather than in favor of a [restriction] . . . ." (Internal quotation marks omitted.) See also *Farrior* v. *Zoning Board of Appeals*, 70 Conn. App. 86, 89–90, 796 A.2d 1262 (2002); *Daughters of St. Paul, Inc.* v. *Zoning Board of Appeals*, 17 Conn. App. 53, 66, 549 A.2d 1076 (1988). While we agree with these general principles, we disagree with their application to the present case. We have determined that, for the reasons previously set forth, it is impermissible for the distance requirement contained in article IX, § 4, to be calculated using the roadway method. Accordingly, we need not consider whether § 4 contains a restriction extended by implication or doubtful language that should be construed against the defendant.

Having determined that the straight line calculation is the appropriate method to determine the distance requirement contained in § 4 of the zoning regulations, we conclude that substantial evidence supports the board's conclusion that the application filed by Trumbull Falls, LLC, did not meet this requirement.[12] The

---

[12] "This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of

town engineer stated at the hearing before the board that the distance between the proposed development and an existing development was approximately seven-tenths of one mile. More importantly, the parties did not dispute this calculation and stipulated to this measurement before the trial court.

The judgment is reversed and the case is remanded for consideration of the plaintiffs' constitutional issues.

In this opinion the other judges concurred.

fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . The substantial evidence rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration." (Internal quotation marks omitted.) *Horace* v. *Zoning Board of Appeals*, 85 Conn. App. 162, 170, 855 A.2d 1044 (2004).